## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **(1) AMERICAN SOUTHWEST MORTGAGE CORP, and** | ) | |
| **(2) AMERICAN SOUTHWEST MORTGAGE FUNDING CORP,** | ) ) ) ) | |
| **Plaintiffs** | ) | |
| **vs.** | ) ) | **Case No. CIV-20-422-PRW** |
| **(1) CONTINENTAL CASUALTY COMPANY,** | ) ) ) | |
| **Defendant.** | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs, American Southwest Mortgage Corp ("ASMC") and American Southwest Mortgage Funding Corp ("ASMF") (collectively "Plaintiffs"), for their Complaint seeking a declaratory judgment of this Court pursuant to 28 U.S.C. § 2201 to determine a controversy as to the rights and obligations of the parties related to certain policies of insurance issued by Defendant, Continental Casualty Company ("Continental"), to Robison, Gary Johnson & Associations ("Auditors"), and subject to amendment, do allege and state as follows, to wit:

### Jurisdiction

1.     ASMC is an Oklahoma corporation with its principal place of business in Oklahoma.

2.     ASMF is an Oklahoma corporation with its principal place of business in Oklahoma.

3.      Continental is an insurance company created and existing under the laws of the State of Illinois and having its headquarters in Chicago, Illinois, and is therefore a citizen of the State of Illinois.

4.      This lawsuit concerns whether the occurrences that led to judgments entered against Auditors in Oklahoma County Case Numbers CJ-2018-1555 ("ASMF Judgment") and CJ-2018-1579 ("ASMC Judgment") involve a single claim or multiple claims under Continental's insurance policy issued to Auditors.

5.      The insurance policy had per claim limit of $1,000,000 and an aggregate limit of $3,000,000. Therefore, the amount in controversy in this lawsuit exceeds $75,000 exclusive of interest and costs.

6.      This Court is vested with jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1) by virtue of the complete diversity of the citizenship of the parties to this action and the sufficiency of the amount in controversy,.

## Venue

7.      Plaintiffs' claims for a declaratory judgment concern the rights and obligations owed by Continental to Plaintiffs by through the insurance policy Continental issued to Auditors. Auditors assigned to Plaintiffs their rights under the Policy. The Policy was issued to Auditors in Oklahoma City, Oklahoma County, State of Oklahoma. The Policy provides coverage to Auditors, with its rights assigned to Plaintiffs, for judgments in favor of ASMC and ASMF against Auditors.

8.      Because a substantial part of the events giving rise to the claims at issue in this lawsuit occurred in Oklahoma City, Oklahoma County, State of Oklahoma, which is

in the Western District of Oklahoma, venue is properly laid in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## Facts

9.      Continental issued Professional Liability Policy No. 128567086 to Auditors for the September 1, 2017 to September 1, 2018 policy period (the "Policy").

10.     In the Policy, Continental agreed it "will pay on [Auditors] behalf all sums in excess of the deductible, up to our limits of liability, that you become legally obligated to pay as damages and claim expenses because of a claim that is both first made against you and reported in writing to us during the policy period by reason of an act or omission in the performance of professional services by you or by any person for whom you are legally liable[.]"

11.     The "limits of liability" listed on the Declarations Page of the Policy is $1,000,000.00 per claim and $3,000,000.00 in the Aggregate.

12.     On December 4, 2019, the ASMF Judgment was entered against Auditors totaling $1,500,000.

13.     On December 10, 2019, the ASMC Judgment was entered against Auditors totaling $1,500,000.

14.     On or about August 9, 2019, ASMC, ASMF, Auditors and Continental entered into a settlement agreement governing the ASMC and ASMF Judgments.

15.     In the settlement agreement, Continental stipulated that the ASMC and ASMF Judgments against Auditors are within the scope of coverage under its policy covering Auditors.

16.     However, Continental asserted all of the claims against Auditors by Plaintiffs are "Interrelated Claims," such that a single $1,000,000 limit of liability applies to these claims.

17.     Plaintiffs disputed Continental's assertion. Auditors negligently performed separate audits in 2014, 2015 and 2016, and each of these negligent acts separately damaged ASMC and ASMF, and therefore the Aggregate Policy limit of $3,000,000 applies.

18.     Plaintiffs and Continental did not reach an agreement as to whether the single limit or Aggregate limit applied.

19.     Continental concedes the validity of the assignment from Auditors to ASMC and ASMF.

20.     As part of the settlement agreement, the parties agreed to stipulate to the following facts related to Plaintiffs' claims against Auditors:

a.    Auditors performed annual audit reports on the financial statements of First Mortgage Corporation ("FMC") for the three years ending December 31, 2014, 2015 and 2016 (each an "Audit" or collectively "Audits"). The first of these three Audits also contained the financial statements of FMC for calendar year 2013.

b.    ASMC provided a warehouse line of credit to FMC pursuant to a Residential Mortgage loan Origination and Purchase Agreement dated August 3, 2000, as well as a series of amendments and addenda executed between 2000 and 2014 ("ASMC Warehouse Agreements"). The limit of the ASMC

Warehouse Line of Credit increased over time to a maximum of $200,000,000.

c. Section 9.02 of the ASMC August 3, 2000 ASMC Warehouse Agreement permitted ASMC to terminate the entire agreement, including the warehouse line of credit, for cause if FMC was in default or became insolvent. ASMC terminated the ASMC Warehouse Agreements consistent with this provision in late March, 2017, as a result of FMC causing as much as $40,000,000.00 on all of the FMC warehouse lines to become out of trust ("OOT"). An OOT loan is a loan that has funds borrowed by FMC on a warehouse line, but the promissory note securing those funds on behalf of the warehouse lender has been released to the borrower by FMC. ASMC's review of the loans on the ASMC warehouse line determined that there were OOT loans dating back to 2012.

d. ASMC annually, and independently of ASMF, examined and relied upon the Audits to determine whether to continue the ASMC Warehouse Agreements or to terminate the arrangement pursuant to Section 9.02.

e. The Audits did not identify the OOT loan problem.

f. Note E to each Audit stated that borrowing by FMC on ASMC's warehouse line is "collateralized by mortgage loans."

g. Had the Audits identified the OOT loan problem, ASMC would have terminated the ASMC Warehouse Agreements sooner.

h. Note E to each Audit confirmed ASMC and ASMF provided separate warehouse lending to FMC: "ASMC, a wholly owned subsidiary of Spirit Bank of Tulsa, has a loan commitment of $200,000,000 and American Southwest Mortgage Funding Corp (ASMF), a wholly owned subsidiary of Citizens Bank of Okemah, has a loan commitment of $140,000,000."

i. On March 22, 2018, ASMC filed *American Southwest Mortgage Corporation v. First Mortgage Company, Ron McCord and Robison Gary Johnson & Associates, PLLC, et al.*, in the District Court of Oklahoma County; Case No. CJ-2018-1579 (the "ASMC Suit"). The ASMC Suit alleged the Auditors were negligent in performing the 2014, 2015 and 2016 Audits.

j. On April 17, 2019, the district court in the ASMC Suit granted ASMC partial summary judgment against FMC and its Manager, Ron McCord, for their breach of the ASMC Warehouse Agreements ("ASMC Judgment")

k. Beginning in 2013, ASMF began providing its own warehouse line of credit to FMC pursuant to a separate Residential Mortgage Loan Origination and Purchase Agreement dated September 5, 2013, along with a series of amendments and addenda executed in 2013 and 2014. ("ASMF Warehouse Agreements").

l. Section 9.02 of the September 5, 2013 ASMF Warehouse Agreement permitted ASMF to terminate the entire agreement, including the warehouse line of credit, for cause if FMC was in default or became insolvent. ASMF

6

terminated the ASMF Warehouse Agreements consistent with this provision in late March, 2017, as a result of FMC causing loans on its warehouse lines to be OOT. Note E to each audit stated that borrowing by FMC on ASMF's warehouse line is "collateralized by mortgage loans."

m. Had the Audits identified the OOT loan problem, ASMF would have terminated the ASMF Warehouse Agreements sooner.

n. ASMF annually, and independently of ASMC, examined and relied upon the Audits to determine whether to continue the ASMF Warehouse Agreements or to terminate the arrangement pursuant to Section 9.02.

o. On March 20, 2018, ASMF filed *American Southwest Mortgage Funding Corporation v. First Mortgage Company, Ron McCord and Robison Gary Johnson & Associates, PLLC, John and Jane Doe*, in the District Court of Oklahoma County; Case No. CJ-2018-1555 (the "ASMF Suit"). The ASMF Suit alleged Auditors were negligent in performing the 2014, 2015 and 2016 Audits.

p. On March 27, 2019, the district court in the ASMF Suit granted ASMF partial summary judgment against FMC and McCord for their breach of the ASMF Warehouse Agreements ("ASMF Judgment").

q. In Oklahoma, an auditor is liable to third parties for professional negligence "embracing (1) those for whose guidance the auditor intended to supply the audit data and (2) those to whom the auditor knows his client intended to

7

supply the audited financial statements." *Stroud v. Arthur Anderson & Co.*, 2001 OK 76, ¶ 34, 37 P.3d 783, 793-94.

r. At the time of each Audit, Auditors were aware FMC had access to separate warehouse lines of credit supplied by ASMC and ASMF.

s. Continental stipulates that the judgments against Auditors in favor of ASMC and ASMF are within the scope of coverage under the Policy. That is, Continental stipulates it was timely notified of the claims made by ASMC and ASMF and the claims are consistent with "act[s] or omission[s] in the performance of professional services by [Robison.]"

t. However, Continental asserts all of the claims against Robison by ASMC and ASMF are Interrelated Claims, such that a single $1,000,000 limit of liability applies to these claims.

u. ASMC and ASMF assert each Audit performed by Auditors that failed to disclose the OOT loans was a distinct negligent act or omission by Auditors, the lenders independently relied on Auditors' annual audits as the basis for their continued business relationships with FMC, and therefore the Aggregate Policy limit of $3,000,000.00 applies.

v. Continental does not contest the validity of the Auditors' assignment of the policies to ASMC and ASMF, nor does Continental contest that ASMF and ASMC have standing to pursue recovery under the Policy.

w. Continental does not contest that the ASMF and ASMC judgments fall within the scope of coverage under the Policy. However, Continental, ASMF and

ASMC disagree as to whether the applicable limit of coverage for the ASMF and ASMC claims (combined) is $1,000,000, $2,000,000 or $3,000,000.

21.   At the time the parties stipulated to the facts in paragraph 20, the ASMC Judgment and the ASMF Judgment were not yet reduced to an amount. Since then, the ASMC Judgment is being entered against FMC and McCord in the amount of $7,250,000 and the ASMF Judgment is being entered against FMC and McCord in the amount of $8,577,379.53.

22.   Auditors were required in standard auditing practices to independently and annually review the county clerk records to determine whether the loans on the warehouse lines of credit were in trust.

23.   In 2014, several loans on the warehouse lines were OOT, but undiscovered by Auditors.

24.   In 2015, more warehouse line loans went OOT and those were undiscovered.

25.   In 2016, even more warehouse lines went OOT, but again Auditors did not discover them.

26.   Auditors would have discovered these OOT loans had it completed each of these audits consistent with standard auditing practices in any one of these audit years.

27.   Had any one these audits been conducted without negligence, the OOT would have caused ASMC and/or ASMF to cease funding FMC at that point and avoided multi-million dollars in damage.

28.   The Policy is a claims-made policy. The Auditors notified Continental of the lawsuits in March, 2018.

29.     The ASMC and ASMF Suits cover the years 2014, 2015 and 2016 Audits. The negligence was discovered during the September 1, 2017-September 1, 2018, policy year and the lawsuits were filed within that policy year.

30.     As the ASMC and ASMF Judgments against FMC indicate, ASMC and ASMF sustained damages for each audit year in question well above the $3,000,000 aggregate limit.

31.     ASMC and ASMF each sustained damages of more than the per claim limit of $1,000,000 for each audit year of 2014, 2015 and 2016.

32.     ASMC sustained damages in excess of $1,500,000 independent of the damages suffered by ASMF, and vis-a-versa.

33.     The Policy defines "Interrelated acts or omissions" as "all acts or omissions in the rendering of **professional services** that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision." (Emphasis original to note a defined term.)

34.     "Interrelated claims" are all **claims** arising out of a single act or omission or arising out of **interrelated acts or omissions** in the rending of **professional services**." (Emphasis original to note defined terms.)

35.     The limits of each claim, subject to the aggregate limit provision, is for "**damages** and **claim expenses** for each **claim** shall not exceed the amount the amount in the Declarations as "Per **claim**." (Emphasis original to note defined terms.)

36.     The aggregate limit is "for **damages**, and **claim expenses** for all **claims** shall not exceed the amount stated in the Declarations as 'Aggregate.'" (Emphasis original to note defined terms.)

37.     For multiple insureds, claims and claimants, the policy limits "subject to the provisions of this Policy is the amount we will pay as **damages** and **claim expenses** regardless of the number of **you, claims** made or persons or entities making **claims**. If **interrelated claims** are subsequently made against **you** and reported to us, all such **interrelated claims,** whenever made, shall be considered a single **claim** first made and reported to us within the **policy period** in which the earliest of the **interrelated claims** was first made and reported to us." (Emphasis original to note defined terms.)

38.     As noted in the stipulations, Continental concedes Auditors' negligence and coverage under the policy.

39.     The only issue to be decided is whether the Auditors' failure to find or to otherwise disclose the OOT loans in multiple years affecting ASMC and separately ASMF requires the application of the single claim limit under the Policy or the Policy's aggregate limit for multiple claims.

40.     An actual and justiciable controversy presently exists as between ASMC and ASMF, on the one hand, and Continental, on the other hand, as to which policy limit applies, by reason of which the declaration of this Court adjudicating the respective rights of the parties to this lawsuit is sought herein.

41.     Plaintiffs respectfully pray for judgment against Continental declaring the aggregate limit of $3,000,000 applies to these facts as the separate actions of Auditors in

performing the audit in 2014, the next audit in 2015 and the next audit in 2016 are not interrelated acts as defined by the Policy.

42.     Further, Plaintiffs respectfully pray for judgment against Continental declaring the per claim policy limit of $1,000,000 does not apply because Auditors were aware that ASMC and ASMF were independently relying on the audits in making lending decisions.

43.     Finally, Plaintiffs respectfully pray for such other and further relief as the Court may deem just and equitable in the premises, including, but not limited to, and award of attorney fees and costs.

**WHEREFORE**, ASMC and ASMF request a declaratory judgment in their favor finding the Aggregate limit of $3,000,000 applies, for an award of attorney fees and costs and for such other relief as this Court deems just and proper.

Respectfully submitted,

George S. Freedman, OBA #15764
Sarah R. Clutts, OBA #31208
Spencer Fane, PLLC
9400 Broadway Extension, Suite 600
Oklahoma City, Oklahoma 73114
Tel: (405) 844-9900
Fax: (405) 844-9958
gfreedman@spencerfane.com
sclutts@spencerfane.com

**ATTORNEYS FOR PLAINTIFF,**
**AMERICAN SOUTHWEST**
**MORTGAGE CORP.**

Marcus N. Ratcliff, OBA No. 19201
Troy McPherson, OBA No. 32071
Latham, Wagner, Steele & Lehman, P.C.
1515 E. 71st Street, Suite 200
Tulsa, Oklahoma 74136
Tel: (918) 970-2000
Fax: (918) 970-2002
mratcliff@law-lsl.com
tmcpherson@law-lsl.com

**ATTORNEYS FOR PLAINTIFF,
AMERICAN SOUTHWEST
MORTGAGE FUNDING CORP.**