# DECLARATIONS
## ACCOUNTANTS PROFESSIONAL LIABILITY POLICY

---

PRODUCER BRANCH PREFIX POLICY NUMBER

*003613*   *970*   *APL*   *128567086*

INSURANCE IS PROVIDED BY
CONTINENTAL CASUALTY COMPANY
CNA PLAZA, CHICAGO, IL 60685
A STOCK INSURANCE COMPANY
REFERRED TO IN THIS POLICY AS WE, US, OR OUR.

1. Named Insured and Mailing Address
   Robison Gary Johnson & Assoc, PLLC
   14420 Bourbour Ave.
   Oklahoma City, OK 73134

   * * * * NOTICE * * * *
   THIS IS A CLAIMS-MADE AND REPORTED POLICY AND
   COVERS ONLY CLAIMS FIRST MADE AGAINST AN INSURED
   AND REPORTED IN WRITING TO THE COMPANY DURING
   THE POLICY PERIOD. PLEASE READ THIS POLICY
   CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR
   INSURANCE AGENT.

---

2. POLICY PERIOD:   FROM: 9/01/17   TO: 9/01/18   at 12:01 A.M.
   Standard time at your address shown above.

---

3. PRIOR ACTS DATE: 9/01/94   at 12:01 A.M.

---

4. DEDUCTIBLE:   Per Claim Deductible _____ or   Aggregate Deductible _____ $1,000

---

5. LIMITS OF LIABILITY:   (NOTICE TO OKLAHOMA POLICYHOLDERS
   Defense Coverage is within the limits of liability unless otherwise endorsed)

   $1,000,000   PER CLAIM
   $3,000,000   AGGREGATE

---

6. FOR NON-RENEWAL:   45   days notice will be given you in accordance with policy conditions.

---

7. PRINTED ENDORSEMENTS ATTACHED AT POLICY ISSUANCE INCLUDE:

G-127136-A(1/16) Policy
G-127137-A35(7/12) Declarations Page - OK
G-19662-A35(9/94) Policyholder Acknowledgment
G-127157-A(6/97) Nuclear Energy & Pollution Excl.
G-127164-A35(6/97) Amend. Termination Provisions - OK
G-127165-A35(9/12) Amend. Endorsement - OK
G-19546-A35(10/93) Insurance Fraud Warning
G-141584-A(6/03) Policyholder Notice
G-127152-AC(5/06) Claim Expenses Outside Limits

CNA74066OK (07/13) Employee Theft Coverage
G-127139-A Excl Named Individuals or Entities
G-127151-A Prior Acts Date - Predecessor

---

---

8.   $15,981.00      ANNUAL PREMIUM

---

9.   WHO TO CONTACT TO REPORT A CLAIM OR POTENTIAL CLAIM:

     Director of Claims
     Accountants Professional Liability
     CNA Insurance Companies
     333 South Wabash Street
     Chicago, IL 60604
     APLNewLoss@CNA.com

---

THIS POLICY IS NOT VALID UNTIL SIGNED BY OUR AUTHORIZED REPRESENTATIVE.

Authorized Representative

## POLICYHOLDER ACKNOWLEDGMENT

In accordance with the Insurance Regulations in the State of Oklahoma, I hereby acknowledge and understand that the Professional Liability Coverage Part - Accountants does not provide coverage for any **claim** based upon or arising out of:

1. any loss, cost or expense arising out of the actual, alleged or threatened exposure at any time to **asbestos;** or

2. any loss, cost or expense that may be awarded or incurred:

   a. by reason of a **claim** or suit; or

   b. in complying with a governmental directive or request to test for, monitor, clean up, remove, contain, or dispose of **asbestos.**

Accepted by: _____          Date: _____

Signature of Insured

**All other provisions of the policy remain unchanged.**

This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

| Must Be Completed | | Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| 001 | APL-128567086 | Robison Gary Johnson & Assoc, PLLC | 9/01/2017 |

Countersigned by: _____

Authorized Representative

G-19662-A35
(Ed. 09/94)

## CONTINENTAL CASUALTY COMPANY

### ACCOUNTANTS PROFESSIONAL LIABILITY POLICY

#### Amendatory Endorsement
#### Nuclear Energy and Pollution Exclusion

We agree with **you** that the following EXCLUSIONS are added to **your** Policy:

We will not defend or pay under this Policy any **claim** based upon or arising out of any loss, cost or expense:

1. under any circumstances, due to nuclear reaction, radiation, or contamination, regardless of cause.

2. which would not have happened in whole or in part, but for the actual, alleged
   or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time.

3. arising out of any:

    a. Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat,
       detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**; or

    b. **Claim** or suit by or on behalf of a governmental authority for damage because of testing for, monitoring,
       cleaning up, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the
       effects of **pollutants**.

**"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes,
acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

ALL OTHER PROVISIONS OF THIS POLICY REMAIN UNCHANGED.

This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

| Must Be Completed | | Complete Only When This Endorsement Is Not Prepared with the Policy <u>Or</u> Is Not to be Effective with the Policy | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| 002 | APL-128567086 | Robison Gary Johnson & Assoc, PLLC | 9/01/2017 |

Countersigned by _____

Authorized Representative

G-127157-A  (6/97)

**CONTINENTAL CASUALTY COMPANY**

**ACCOUNTANTS PROFESSIONAL LIABILITY POLICY
AMENDMENT OF TERMINATION PROVISIONS -
OKLAHOMA**

We agree with **you** that any cancellation or non-renewal provisions contained in the Policy to which this endorsement is attached are deleted and replaced by the following:

I.   Cancellation

    A.   This Policy can be canceled by either the **Named Insured** or us.

        1.   The **Named Insured** can cancel this Policy at any time. To do so, the **Named Insured** must:

            a.   return the Policy to us or any of our authorized representatives; or
            b.   mail a written notice to us;
            stating when the cancellation is to be effective. We must receive the Policy or written notice before the cancellation date.

        2.   We can cancel this Policy by giving written notice to the **Named Insured** at least:

            a.   10 days, if cancellation is for nonpayment of premium. The **You** may continue the coverage by payment in full at any time prior to the date the cancellation is effective; or
            b.   30 days if cancellation is for any other reason;
            before the date the cancellation is effective.

    B.   We will mail or deliver notice to the **Named Insured** at the last mailing address known to us.

    C.   Notice of cancellation will state the date the cancellation is effective. The Policy will end on that date. The grounds for such cancellation shall also be stated, and upon the **Named Insured's** written request, we shall furnish the facts upon which the cancellation is based.

    D.   If notice is mailed, proof of mailing will be sufficient proof of notice.

    E.   If this Policy is canceled, we will send the **Named Insured** any premium refund due. If we cancel, the refund will be pro-rata. If the **Named Insured** cancels, the refund may be less than pro-rata. The cancellation will be effective even if we have not made or offered a refund.

    F.   If this Policy has been in effect for more than 45 days, or is a renewal, we shall not cancel this Policy except for one or more of the following conditions:

        1.   non-payment of premium;
        2.   any:
            a.   material misrepresentation; or
            b.   fraud relating to this Policy or to a claim made under this Policy;
            by or with the knowledge of you or your representatives;
        3.   actions by **you** that have substantially increased or changed the risk insured;
        4.   discovery of any willful or reckless acts or omissions by **you**, which increases the hazard insured against;
        5.   a material increase in the hazard insured against:
            a.   resulting from a violation of any local fire, health, safety, building or construction regulations or ordinance with respect to any insured property or its occupancy; or
            b.   having as one of its necessary elements the conviction of a crime
        6.   a determination by the insurance regulatory authority that continuation of the policy will place us in violation of the insurance laws of the state; or
        7.   loss of or substantial changes in applicable reinsurance.

II.   Non-Renewal

If we decide not to renew this Policy, we will mail the **Named Insured** notice at least 45 days before the end of the **policy period**.  Written notice shall be mailed to the **Named Insured** at the address shown on the Policy. The Notice shall include the reason for such non-renewal.  Proof of mailing shall be sufficient proof of notice.

This provision shall not apply in the event:

A.   **you** have obtained replacement coverage; or
B.   **you** have agreed in writing to obtain replacement coverage.

If notice of non-renewal is mailed less than 45 days before the expiration, the coverage shall remain in effect until 45 days after the notice is mailed.  Earned premium for any period of coverage that extends beyond the expiration date shall be considered pro-rata based upon the previous year s rate.

If we provide the required notice and thereafter extend the policy for 90 days or less, an additional notice of non-renewal is not required.

III.   Renewal

If we offer to renew this Policy, at less favorable terms as to the dollar amount of coverage, deductibles, higher rates or rating plans, such less favorable terms will take effect on the renewal date if we have notified the **Named Insured** at least 45 days prior to the expiration date of this Policy.

If we have not given such advance notice, the policy coverage then in effect remains in effect until 45 days after the date of mailing the notice, unless you notify us in writing that you do not want the existing coverage extended past the policy expiration date.  Proof of mailing shall be sufficient proof of notice.

The provisions of the previous paragraphs shall not apply if the changes are:

A.   in a rate plan filed with the insurance regulatory authority and are applicable to the entire class of business to which this Policy belongs; or
B.   based upon the altered nature or extent of the risk insured; or
C.   in policy forms filed and approved with the insurance regulatory authority and applicable to an entire class of business; or
D.   requested by you.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

| *Must Be Completed* | | *Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy* | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| 003 | APL-128567086 | Robison Gary Johnson & Assoc, PLLC | 9/01/2017 |

Countersigned by _____

Authorized Representative

**CONTINENTAL CASUALTY COMPANY**

**ACCOUNTANTS PROFESSIONAL LIABILITY POLICY**

**AMENDATORY ENDORSEMENT - OKLAHOMA**

We agree with **you** that the following amendment is made a part of **your** Policy:

Section VII. Extended Claim Reporting Period, Paragraph C. is deleted in its entirety and replaced with the following:

    C.    Elimination of right to any extended claim reporting period

        There is no right to the optional **extended claim reporting period** if we cancel or refuse to renew this Policy due to non-payment of premiums.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

| Must Be Completed | | Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| 004 | APL-128567086 | Robison Gary Johnson & Assoc, PLLC | 9/01/2017 |

Countersigned by _____
                                          Authorized Representative

# OKLAHOMA

## FRAUD WARNING

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

| Must Be Completed | |
|---|---|
| ENDT. NO. | POLICY NO. |
| 005 | APL-128567086 |

| Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy | |
|---|---|
| ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| Robison Gary Johnson & Assoc, PLLC | 9/01/2017 |

Countersigned by _____

Authorized Representative

G-19546-A35
(ED. 10/93)



## POLICYHOLDER NOTICE

Ethics and proper business conduct has been the cornerstone of CNA since 1897. While much has changed during the last century, our commitment to these core values has not wavered. We strongly believe that proper business conduct is more than the practice of avoiding wrong; it is also a matter of choosing to do right. Nowhere is this more essential than helping in the fight against terrorism. As such, we are committed to complying with U.S. Department of Treasury Office of Foreign Asset Control (OFAC) requirements.

Through a variety of laws, OFAC administers and enforces economic sanctions against countries and groups of individuals, such as terrorists and narcotics traffickers. These laws prohibit all United States citizens (including corporations and other entities) and permanent residents from engaging in transactions with sanctioned countries and with individuals and entities on the Specially Designated Nationals (SDN) list. Because all U.S. citizens and companies are subject to this law, we wanted to be sure you were aware of its scope and restrictions. If you haven t already done so, you may want to consider discussing this issue with your legal counsel to ensure you are in compliance.

For insurance companies, accepting premium from, issuing a policy to, insuring property of, or making a claim payment to an individual or entity that is the subject of U.S.-imposed economic sanctions or trade embargoes usually are violations of these laws and regulations. Fines for violating OFAC requirements can be substantial. CNA has established an OFAC compliance program part which includes the use of exclusionary policy language. We believe this makes good business sense for CNA and you.

Our records indicate that you have insurance coverage coming up for renewal with us. The purpose of this letter is to advise you that your renewal policy includes OFAC exclusionary policy language, which may reduce or eliminate certain coverage. Specifically, if it is determined that your policy violates certain Federal or State laws or regulations, such as the U.S. list of Specially Designated Nationals or Blocked Persons (organizations or individuals associated with terrorist groups), any term or condition of your policy will be null and void to the extent it violates the applicable laws or regulations of the United States.

We're sure you share our commitment to compliance and thank you for your cooperation.

Your policy language reads as follows:

# ECONOMIC AND TRADE SANCTIONS CONDITION

The following condition is added to the Policy:

## ECONOMIC AND TRADE SANCTIONS CONDITION

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy is void from its inception with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

1. Any insured under this Policy, or any person or entity claiming the benefits of such insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to U.S. economic or trade sanctions;

2. Any claim or suit that is brought in a Sanctioned Country or by a Sanctioned Country Government, where any action in connection with such claim or suit is prohibited by U.S. economic or trade sanctions;

3. Any claim or suit that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to U.S. economic or trade sanctions;

4. Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country Government, where any activities related to such property are prohibited by U.S. economic or trade sanctions; or

5. Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to U.S. economic or trade sanctions.

As used in this endorsement a Specially Designated National or Blocked Person is any person or entity that is on the list of Specially Designated Nationals and Blocked Persons issued by the U.S. Treasury Department's Office of Foreign Asset Control (O.F.A.C.) as it may be from time to time amended.

As used in this endorsement a Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States of America.



## AMENDATORY ENDORSEMENT - CLAIM EXPENSES OUTSIDE THE LIMITS

We agree with **you** that the following amendments are made part of **your** Policy:

1. Item 5, LIMITS OF LIABILITY of the Declarations is amended by deleting the phrase "Includes claims expenses". In addition, Item 5, LIMITS OF LIABILITY is amended to include the following new Limit of Liability.

> **Claim expenses** $___1,000,000___ per **claim**
> **Claim expenses** $___3,000,000___ in the aggregate

2. Section II., COVERAGE AGREEMENTS, paragraph C. is deleted in its entirety and replaced as follows:

C.  1.  Payment of **damages**

We are not obligated to investigate, defend, pay or settle a **claim** after the applicable limit of our liability has been exhausted by payment of **damages** or after we have tendered the remaining available limits of liability into a court of competent jurisdiction. In such case, we shall have the right to withdraw from the further investigation, defense or settlement of any **claim** by tendering control of said investigation, defense or settlement to **you**. We will initiate, and cooperate in, the transfer of control to **you** of any **claims** which were reported to us prior to the exhaustion of such limit. **You** must cooperate in the transfer of control of such **claims**. We agree to take the necessary steps, as we deem appropriate, to avoid a default in such **claims** until such transfer has been completed, provided **you** cooperate in completing such transfer. **You** must reimburse us for expenses we incur in taking those steps we deem appropriate to avoid a default.

2.  Payment of **claim expenses**

We are not obligated to investigate or defend or continue to investigate or defend a **claim** after the limit of liability applicable to **claims expenses** as set forth in paragraph 4 of this Endorsement is exhausted. In such case we shall have the right to withdraw from the further investigation or defense of such **claim** by tendering control of said investigation, defense or settlement of the **claim** to **you**. However, we reserve the right to designate counsel, at our own expense, to associate with **you** in the continued defense of such **claim**. In such case, **you** shall not enter into any settlement or agreement without our prior written consent.

3. Section III., LIMITS OF LIABILITY paragraphs A and B are deleted in their entirety and replaced as follows:

A.  **Damages** Limit of Liability - Each **Claim**

Subject to B. below, the limit of liability for **damages** for each **claim** shall not exceed the amount stated in the Declarations as "Per **Claim**".

B.  **Damages** Limit of Liability - Aggregate

Subject to A. above, the limit of liability for **damages** for all **claims** shall not exceed the amount stated in the Declarations as "Aggregate".

© CNA. All Rights Reserved.



4.   Section III., LIMITS OF LIABILITY, is amended to add the following new paragraphs as follows:

- **Claim Expenses** Limit of Liability - Each **Claim**

  Subject to the Aggregate **Claim Expenses** Limit of Liability below, the limit of liability for **claim expenses** for each **claim** shall not exceed the amount stated in Item 1 of this Endorsement as the "Per **Claim**" Limit of Liability for **claim expenses**.

- **Claim Expenses** Limit of Liability - Aggregate

  Subject to the Each **Claim Claim Expenses** Limit of Liability above, the limit of liability for **claim expenses** for all **claims** shall not exceed the amount stated in Item 1 of this Endorsement as the "Aggregate" Limit of Liability for **claim expenses**.

**Claim expenses** are not payable under this Policy until all other valid and collectible insurance available to **you** for **claim expenses** has been exhausted.

All other terms and conditions of the Policy remain unchanged.

This endorsement is a part of **Your** Policy and takes effect on the effective date of **Your** Policy, unless another effective date is shown below.

| Must Be Completed | Complete Only When This Endorsement Is Not Prepared with the Policy <u>Or</u>  Is Not to be Effective with the Policy |
|---|---|
| ENDT. NO.   POLICY NO.<br>006     APL-128567086 | ISSUED TO<br>Robison Gary Johnson & Assoc, PLLC     EFFECTIVE DATE OF<br>THIS ENDORSEMENT<br>9/01/2017 |

Countersigned by _____
                              Authorized Representative

© CNA.  All Rights Reserved.

## ACCOUNTANTS PROFESSIONAL LIABILITY POLICY

### EMPLOYEE THEFT COVERAGE ENDORSEMENT
### (INCLUDING PARTNERS) - OKLAHOMA

It is understood and agreed that the Policy is amended as follows:

**I.**  The Section entitled **COVERAGE AGREEMENTS** is amended by the addition of the following new Coverage Agreement:

- **Employee Theft**

   We will pay for loss of, and loss from damage to, **covered property** as a direct result of **theft**, provided that such loss is **discovered** by **you** during the **policy period**.

**II.**  The Section entitled **LIMITS OF LIABILITY** is amended by the addition of the following:

- **Employee Theft** Coverage Agreement Per **Occurrence** and Aggregate Limit of Liability

   The most we will pay for loss under the **Employee Theft** Coverage Agreement is    $250,000    per **occurrence** and for all **occurrences** in the aggregate. This Limit of Liability is in addition to, and not part of, the Limits of Liability set forth on the Declarations.

- **Employee Theft** Coverage Agreement Deductible

   We will not pay for loss in any one **occurrence** unless the amount of such loss exceeds    $1,000    . We will then pay the amount of loss in excess of such deductible amount, up to the limit of insurance. This deductible is separate from, and not part of, the deductible set forth on the Declarations.

   **You** must:

   (1)  give us notice as soon as possible of any loss of the type insured under the **Employee Theft** Coverage Agreement, even if it falls entirely within the deductible amount; and

   (2)  upon our request, give us a statement describing the loss.

**III.**  Solely with respect to the coverage provided by this endorsement, the Section entitled **DEFINITIONS** is amended as follows:

**A.**  The following new definitions are added:

   **Client** means any person or entity while engaging **your professional services**.

   **Covered property** means **money, securities** and **property other than money and securities**.

   **Discover** or **Discovered** means the time when **you** first:

   A.  become aware of facts which would cause a reasonable person to assume that a loss covered by the **Employee Theft** Coverage Agreement did or will happen, regardless of when the act that may cause or contribute to such loss occurred, even though the exact amount or details of loss may not be known; or

   B.  receive notice of an actual or potential claim in which it is alleged that **you** are liable to a third party under circumstances which, if true, would constitute a covered loss.

   **Employee** means:

   A.  any natural person:

1. while in **your** service (and for 60 days after termination of service); and

2. whom **you** compensate directly by salary, wages, or commissions; and

3. whom **you** have the right to direct and control while performing services for **you**; or

B. any natural person who is furnished to **you**:

1. to substitute for a permanent **employee** on leave; or

2. to meet seasonal or short-term workload conditions;

while that person is subject to **your** direction and control and performing services for **you**, excluding, however, any such person while having care and custody of **covered property** outside **your** premises; or

C. any natural person leased to **you**, under an agreement between **you** and a labor leasing firm, while that person is subject to **your** direction and control and performing services for **you**; or

D. solely with respect to an **employee benefit plan**, any natural person who is required to be bonded by the Employee Retirement Income Security Act of 1974 (ERISA), any amendments thereto and any regulations promulgated thereunder.

However, other than with respect to an **employee benefit plan**, **employee** does not mean any:

1. agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

2. director or trustee, whether compensated or not, except while performing acts coming within the scope of the usual duties of an **employee**.

**Employee benefit plan** means an employee welfare benefit plan or an employee pension benefit plan as more fully set forth in Title 1, Section 3 of the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto and which is solely sponsored by the **Named Insured** and which is in existence at the inception of the **policy period**.

**Money** means:

A. currency, coins and bank notes in current use and having a face value; and

B. travelers checks, register checks and money orders held for sale to the public.

**Occurrence** means all loss caused by, or involving, one or more of **your employees** or **partners**, whether the result of a single act or series of acts, and whether the loss involves one or more instruments or documents.

**Partner** means any natural person who is a partner, shareholder, member or similar designee with respect to any partnership, limited liability partnership, limited liability corporation, professional corporation, privately held corporation or professional association which is a **Named Insured**.

**Property other than money and securities** means any tangible property other than **money** and **securities** that has intrinsic value.

**Securities** means negotiable and non-negotiable instruments or contracts representing either **money** or other property and includes:

A. tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

B.      evidences of debt issued in connection with credit or charge cards, which cards are not issued by **you**; but does not include **money**.

**Theft** means the unlawful taking of **covered property** committed by any of **your employees** or **partners** acting alone or in collusion with others.

**B.**     The definition of **you** and **your** is deleted in its entirety and replaced by the following:

**You** and **your** means the **Named Insured**, any **employee benefit plan** or any entity identified as a **you** or **your** by endorsement to this Policy.

**IV.**    Solely with respect to the coverage provided by this endorsement, the Section entitled **EXCLUSIONS** is deleted in its entirety and replaced with the following:

**EXCLUSIONS**

We will not cover any:

A.      loss resulting from seizure or destruction of property by order of governmental authority;

B.      loss that is an indirect result of any act or **occurrence** covered by this insurance including, but not limited to, loss resulting from:

   (1)      **your** inability to realize income that **you** would have realized had there been no loss of, or loss from damage to **covered property**;

   (2)      payment of damages of any type for which **you** are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance;

   (3)      payment of costs, fees or other expenses **you** incur in establishing either the existence or the amount of loss under this insurance;

   (4)      salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment;

C.      legal expenses, including expenses relating to any legal action;

D.      loss resulting from nuclear reaction, nuclear radiation or radioactive contamination, or any related incident;

E.      loss resulting from war, whether or not declared, warlike action, insurrection, rebellion or revolution, or any related act or incident;

F.      loss caused by an **employee** or **partner** of **yours**, or a predecessor in interest of **yours**, for whom similar prior insurance has been cancelled and not reinstated since the last such cancellation;

G.      loss, or that part of any loss, from inventory shortages, the proof of which as to its existence or amount is dependent upon:

   (1)      an inventory computation; or

   (2)      a profit and loss computation;

H.      loss or liability resulting from the quality, truthfulness or accuracy of **your professional services** or of any report **you** prepare in connection with such services;

I.       loss resulting directly or indirectly from any trading of **covered property**, whether or not in **your** name and whether or not in a genuine or fictitious account, provided, however, that this exclusion shall not apply to direct losses caused by **theft** which resulted in improper financial gain to an **employee** or

**partner**. Salary, commissions, fees, or other emoluments, including, but not limited to, promotions and raises associated with employment, paid by **you** to such **employee** or **partner** shall not constitute improper financial gain;

J.     loss resulting directly or indirectly from the theft, disappearance, destruction or disclosure of confidential information including, but not limited to, trade secrets, personal **client** or customer information, **client** or customer lists, a **client's** or customer's personally identifiable financial or medical information and intellectual property, whether such confidential information is owned by **you** or held by **you** in any capacity, including concurrently with another person or entity;

K.     loss based on or arising out of liability assumed under any contract or agreement, unless **you** would have been liable if the contract or agreement did not exist;

**V.**    Solely with respect to the coverage provided by this endorsement, the Section entitled **POLICY CONDITIONS** is deleted in its entirety and replaced with the following:

### POLICY CONDITIONS

A.    Cancellation / Non-renewal

       **Your** rights and our rights are stated in the attached State Provisions endorsement.

B.    Cancellation as to any **employee** or **partner**

       This insurance is cancelled, as to any **employee** or **partner**:

       (1)    immediately upon discovery by:

             (a)    **you**; or

             (b)    any natural person not in collusion with such **employee** or **partne**r who is: a **partner**; an officer of the corporation; or an officer, official, director, trustee or administrator of any plan, trust, union, association, club or other organization which is a **Named Insured** or has been added as a **you** or **your** by endorsement to this Policy;

            of any **theft** committed by that **employee** or **partner** whether before or after becoming **your employee** or **partner**.

       (2)    on the date specified in a notice mailed to **you**. That date will be at least 30 days after the date of mailing. The mailing of notice to **you** at the last mailing address known to us will be sufficient proof of notice. Delivery of notice is the same as mailing.

C.    Changes

       This endorsement contains all of the agreements between **you** and us concerning the insurance afforded by this endorsement. The first **Named Insured** is authorized to make changes in the terms of this endorsement with our consent. This endorsement's terms can be amended or waived only by endorsement issued by us and made part of this policy.

D.    Examination of **Your** Books and Records

       We may examine and audit **your** books and records as they relate to this coverage at any time during the **policy period** and up to three years afterward.

E.    Inspections and Surveys

       We have the right but are not obligated to:

       (1)    make inspections and surveys at any time;

       (2)    give **you** reports on the conditions we find; and

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health and safety of workers or the public. We do not warrant that conditions:

(1)     are safe or healthful; or

(2)     comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance product inspections, surveys, reports or recommendations.

F.     Premiums

The first **Named Insured** is responsible for the payment of all premiums and will be the payee for any return premiums we pay.

G.     Transfer of Your Rights and Duties Under This Endorsement

**Your** rights and duties under this endorsement may not be transferred without our written consent except in the case of death of an individual **Named Insured**.

If **you** die, **your** rights and duties will be transferred to **your** legal representative but only while acting within the scope of duties as **your** legal representative. Until **your** legal representative is appointed, anyone having proper temporary custody of **your** property will have **your** rights and duties but only with respect to that property.

H.     Concealment, Misrepresentation or Fraud

This insurance is cancelled in any case of fraud by **you** as it relates to this insurance at any time. It is also cancelled if **you** or any other insured at any time, intentionally conceal or misrepresent a material fact concerning:

(1)     this insurance;

(2)     the **covered property**;

(3)     **your** interest in the **covered property**; or

(4)     a claim under this insurance.

I.     Consolidation - Merger

If through consolidation or merger with, or purchase of assets of, some other entity:

(1)     any additional persons become **employees**; or

(2)     **you** acquire the use and control of additional premises;

any insurance afforded for **employees** or premises also applies to those additional **employees** and premises but only if you give us written notice within 30 days thereafter and pay us additional premium.

J.     Extended Period to Discover Loss

We will pay for loss that **you** sustained prior to the effective date of termination or cancellation of this insurance, which is discovered by **you** no later than 60 days from the date of that termination or cancellation, for no additional premium.

We will pay for loss that **you** sustained prior to the effective date of termination or cancellation of this insurance, which is discovered by **you** no later than one year from the date of that termination or cancellation, for an additional premium of 100% of the annual premium. If **you** choose to purchase this extended period to discover loss, **you** must provide us written notice prior to the effective date of termination or cancellation and pay the additional premium within 30 days of the effective date of termination or cancellation.

K.    Duties in the Event of Loss

After **you** discover a loss or a situation that may result in loss of, or loss from damage to, **covered property you** must:

(1)    notify us as soon as possible. Notice of loss should be reported to us by regular mail or email sent to the addresses specified in the Declarations. The date we receive such notice shall constitute the date such notice was given. Proof of mailing shall be sufficient proof of notice;

(2)    submit to an examination under oath at our request, and give us a signed statement of answers;

(3)    give us a detailed, sworn proof of loss within 180 days; and

(4)    cooperate with us in the investigation and settlement of any claim.

L.    Joint Insured

(1)    If there is more than one **Named Insured**, the first **Named Insured** will act for itself and for every other insured for all purposes of this insurance. If the first **Named Insured** ceases to be covered, then the next **Named Insured** will become the first **Named Insured**.

(2)    If any insured or **partner** or officer of that insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every insured.

(3)    An **employee** of any insured is considered to be an **employee** of every insured.

(4)    We will not pay more for loss sustained by more than one insured than the amount we would pay if all the loss had been sustained by one insured.

M.    Legal Action Against Us

**You** may not bring any legal action against us involving loss:

(1)    unless **you** have complied with all the terms of this insurance;

(2)    until 90 days after **you** have filed proof of loss with us; and

(3)    unless brought within 2 years from the date **you** discover the loss.

N.    Non-Cumulation of Limit of Insurance

Regardless of the number of years this insurance remains in force or the number of premiums paid or the duration of any loss, no limit of insurance or deductible amount applicable to the coverage provided by this endorsement cumulates from year to year or period to period.

O.    Other Insurance

This insurance does not apply to loss recoverable or recovered under other insurance or indemnity. However, if the limit of the other insurance or indemnity is insufficient to cover the entire amount of the loss, this insurance will apply to that part of the loss, other than that falling within any deductible amount, not recoverable or recovered under the other insurance or indemnity. However, this insurance will not apply to the amount of loss that is more than the applicable Limit of Insurance shown in Section II. of this endorsement.

P.     Ownership of Property – Interests Covered

The **covered property** covered under this insurance is limited to such **covered property**:

(1)     that **you** own or lease;

(2)     that **you** hold for others; or

(3)     that is owned or held by **your clients** under circumstances which make **you** responsible for the **covered property** prior to the **occurrence** of loss.

Solely with respect to an **employee benefit plan**, the **covered property** covered under this insurance is limited to all funds or property that the **employee benefit plan** uses or may use as a source for the payment of benefits to plan participants or beneficiaries, as described by the Employee Retirement Income Security Act of 1974 (ERISA), any amendments thereto and any regulations promulgated thereunder.

However, this insurance is for **your** benefit only. It provides no rights or benefits to any other person or organization.

Q.     Records

**You** must keep records of all **covered property** so we can verify the amount of any loss.

R.     Recoveries

(1)     Any recoveries, less the cost of obtaining them, made after settlement of loss covered by this insurance will be distributed as follows:

(a)     to **you**, until **you** are reimbursed for any loss that **you** sustain that exceeds the Limit of Insurance and the Deductible amount, if any;

(b)     then to us, until we are reimbursed for the settlement made;

(c)     then to **you**, until **you** are reimbursed for that part of the loss equal to the Deductible amount, if any.

(2)     Recoveries do not include any recovery:

(a)     from insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

(b)     of original **securities** after duplicates of them have been issued.

S.     Subrogation

In the event of any payment under this Coverage Agreement, we shall be subrogated to all **your** rights of recovery thereof against any person or organization, including any rights **you** may have against any other person insured under this Policy who is involved in dishonest, fraudulent, criminal, malicious or intentional conduct. **You** shall execute and deliver instruments and papers and do whatever else is necessary to secure and collect upon such rights.  **You** shall do nothing to prejudice such rights.

T.     Territory

The coverage provided under this endorsement applies to acts committed or events occurring anywhere in the world.

U.     Transfer of **Your** Rights of Recovery Against Others to Us

**You** must transfer to us all **your** rights of recovery against any person or organization for any loss **you** sustained and for which we have paid or settled. **You** must also do everything necessary to secure those rights and do nothing after loss to impair them.

V.     Valuation – Settlement

(1)    Subject to the applicable Limit of Insurance provision, we will pay for:

   (a)    loss of **money** but only up to and including its face value. We may, at our option, pay for loss of **money** issued by any country other than the United States of America:

      (i)    at face value in the **money** issued by that country; or

      (ii)   in the United States of America dollar equivalent determined by the rate of exchange published in The Wall Street Journal on the day such loss was discovered (or if not published on such date, the next publication date of The Wall Street Journal).

   (b)    loss of **securities** but only up to and including their value at the close of business on the day the loss was discovered. We may, at our option:

      (i)    pay the value of such **securities** or replace them in kind, in which event **you** must assign to us all **your** rights, title and interest in and to those **securities**;

      (ii)   pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the **securities**. However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

         i.     value of the **securities** at the close of business on the day the loss was discovered; or

         ii.    Limit of Insurance.

   (c)    loss of, or loss from damage to, **property other than money and securities** or loss from damage to the premises for not more than the:

      (i)    actual cash value of the property on the day the loss was discovered;

      (ii)   cost of repairing the property or premises; or

      (iii)  cost of replacing the property with property of like kind and quality,

   We may, at our option, pay the actual cash value of the property or repair or replace it. If we cannot agree with **you** upon the actual cash value of the cost of repair or replacement, the value cost will be determined by arbitration.

(2)    We may, at our option, pay for loss of, or loss from damage to, property other than money:

   (a)    in the money of the country in which the loss occurred; or

   (b)    in the United States of America dollar equivalent of the money of the country in which the loss occurred determined by the rate of exchange published in The Wall Street Journal on the day the loss was discovered (or if not published on such date, the next publication date of The Wall Street Journal).

(3)    Any property that we pay for or replace becomes our property.

W.    Loss Caused by **Partners**

We will not pay for loss caused by any of **your partners** unless the amount of such loss exceeds the sum of:

(1)     any amounts that **you** owe to any such **partner**;

(2)     the value of any such **partner's** interest in **you** as determined by the closing of **your** books on the date of discovery of the loss by **you** or any of **your partners** not in collusion with the **partner** causing the loss; and

(3)     the applicable deductible amount.

X.      Insured Sponsored ERISA Plans

In compliance with certain provisions of the Employee Retirement Income Security Act of 1974 (ERISA):

(1)     If the first **Named Insured** is an entity other than an **employee benefit plan**, any payment made by us will be made jointly to the first **Named Insured** and to the **employee benefit plan** that sustained the loss.

(2)     If two or more **employee benefit plans** are insured under this **Employee Theft** Coverage Agreement, any payment we make for loss:

(a)     sustained by two or more **employee benefit plans;** or

(b)     of commingled funds or other property of two or more **employee benefit plans**

is to be shared by each **employee benefit plan** sustaining loss in the proportion that the amount of insurance required for each such **employee benefit plan** under ERISA bears to the total of such payments.

(3)     The deductible applicable to the **Employee Theft** Coverage Agreement does not apply to loss sustained by any **employee benefit plan** subject to ERISA which is insured under this Coverage Agreement.

(4)     The first **Named Insured** must purchase a Limit of Liability applicable to the **Employee Theft** Coverage Agreement that is at least equal to the minimum amount required by ERISA for any **employee benefit plans**. If **employee benefit plans** are insured jointly with any other entity under this Coverage Agreement the limit must be at least equal to the minimum amount required by ERISA if each **employee benefit plan** were insured independently.  If, during the **policy period**, it is determined that the applicable Limit of Liability as set forth in this endorsement was less than the amounts required by ERISA on the effective date of this Policy, then, at the request of the first **Named Insured** during the **policy period**, and subject to the payment of any additional premium, the applicable Limit of Liability may be amended to equal the minimum amount required by ERISA.

ALL OTHER PROVISIONS OF THE POLICY REMAIN UNCHANGED.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

| Must Be Completed | | Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy | |
|---|---|---|---|
| ENDT. NO. | POLICY NO | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| 007 | APL-128567086 | Robison Gary Johnson & Assoc, PLLC | 9/01/2017 |

Countersigned by _____

Authorized Signature

**CONTINENTAL CASUALTY COMPANY**

**ACCOUNTANTS PROFESSIONAL LIABILITY POLICY**

**AMENDATORY ENDORSEMENT**
**EXCLUSION OF NAMED INDIVIDUALS OR ENTITIES**

We agree with **you** that this Policy does not apply to any **claim** arising out of **professional services** rendered for, by or on behalf of, or in any way involving the individuals or entities named below:

Smack Dab LTD LLC
Waybo Energy LLC
Barcas Pipeline Ventures LLC
BPV Gathering & Marketing LLC
Native Drilling Fluids LLC
Churchill Brown & Associates
Henley & Johnson PLLC

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

| Must Be Completed | | Complete Only When This Endorsement Is Not Prepared with the Policy Or Is Not to be Effective with the Policy | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| 008 | APL-128567086 | Robison Gary Johnson & Assoc, PLLC | 9/01/2017 |

Countersigned by _____

Authorized Representative

**CONTINENTAL CASUALTY COMPANY**

---

## ACCOUNTANTS PROFESSIONAL LIABILITY POLICY

### Amendatory Endorsement
### Prior Acts Date - Predecessor Firm

We agree with **you** that solely with respect to the **predecessor firm** named below, the definition of **prior acts date** is deleted and replaced with the following:

**Prior acts date** for the **predecessor firm** of:

Robison Gary & Associates PLLC

is  9/01/1994

This Policy excludes from coverage all **claims** by reason of acts or omissions that happened before such **prior acts date.**

ALL OTHER PROVISIONS OF THIS POLICY REMAIN UNCHANGED.

This endorsement is a part of your policy and takes effect on the effective date of your policy, unless another effective date is shown below.

| Must Be Completed | | Complete Only When This Endorsement Is Not Prepared with the Policy _Or_ Is Not to be Effective with the Policy | |
|---|---|---|---|
| ENDT. NO. | POLICY NO. | ISSUED TO | EFFECTIVE DATE OF THIS ENDORSEMENT |
| 009 | APL-128567086 | Robison Gary Johnson & Assoc, PLLC | 9/01/2017 |

Countersigned by _____

Authorized Representative

G-127151-A  (6/97)



**ACCOUNTANTS PROFESSIONAL LIABILITY POLICY**

**YOUR ACCOUNTANTS PROFESSIONAL LIABILITY INSURANCE IS WRITTEN ON A "CLAIMS-MADE" BASIS.  IT PROVIDES COVERAGE FOR THOSE CLAIMS WHICH ARE BOTH FIRST MADE AGAINST YOU AND REPORTED TO US IN WRITING DURING THE POLICY PERIOD.**

Throughout this Policy, the terms "we", "us" and "our" refer to the Stock Insurance Company, named on the Declarations, providing this insurance.

**I.     DEFINITIONS**

The following terms shown in **bold face** type in this Policy will have only the meaning indicated below:

**Advertising injury** means injury that arises in the course of advertising **your professional services** by reason of:
A.     the oral or written publication of material that slanders or libels an individual or entity or disparages its goods, products or services;
B.     misappropriation of advertising ideas or style of doing business; or
C.     infringement of copyright, title or slogan.

**Bankruptcy trustee** means the individual appointed by the U.S. Trustee or elected by creditors or appointed by a judge to administer the bankruptcy estate during a bankruptcy case.

**Benefit plan fiduciary** means any of **you** while exercising discretionary authority or discretionary control:
A.     respecting management of an employee benefit plan;
B.     respecting disposition of the assets of an employee benefit plan, including but not limited to purchasing or selling investments on behalf of such a plan; or
C.     in the administration of an employee benefit plan.

**Bodily injury** means injury to the body, including sickness or disease sustained by any person and death resulting from such injuries; emotional distress or mental anguish sustained by any person whether or not resulting from such injury; and all injuries that are a consequence of the foregoing.  However, **bodily injury** does not include emotional distress or mental anguish arising from **personal injury**.

**Claim** means a demand received by **you** for money or services naming **you** and alleging an act or omission, including **personal injury** or **advertising injury,** in the rendering of **professional services**. A demand shall include the service of suit or the institution of arbitration proceedings against **you**.

**Claim** also means:
A.     **privacy claims**; and



B.      **client network damage claims**.

**Claim expenses** are those fees charged by an attorney we designate or consent to, and all other fees, costs and expenses resulting from the investigation, adjustment, expert analysis, defense and appeal of a **claim**, if incurred by us or by **you** with our written consent. **Claim expenses** do not include salaries of our employees or officers, or fees and expenses of independent adjusters retained by us.

**Client network damage claim** means a demand received by **you** for money or services naming **you** and alleging that a **security breach** or **electronic infection** caused **network damage** to a client's **network** in the rendering of **professional services**. A demand shall include the service of suit or the institution of arbitration proceedings against **you**.

**Computer virus** means unauthorized computer code that is designed and intended to transmit, infect and propagate itself over one or more **networks**, and cause:
A.      computer code or programs to perform in an unintended manner;
B.      the deletion or corruption of electronic data or software; or
C.      the disruption or suspension of a **network**.

**Confidential commercial information** means information that has been provided to **you** by another, or created by **you** for another, where such information is subject to the terms of a confidentiality agreement or equivalent obligating **you** to protect such information on behalf of another.

**Court-appointed receiver** means a disinterested person appointed by a court for the protection or collection of property that is the subject of diverse claims because such property belongs to a bankrupt entity or is otherwise being litigated.

**Crisis event** means:
A.      the death, departure or debilitating illness of a **Principal Insured**;
B.      the dissolution of the **Named Insured**;
C.      an incident of workplace violence; or
D.      the arrest of, or initiation of a criminal investigation or criminal proceeding against, a **Principal Insured** in connection with the rendering of **professional services**;
that the **Named Insured** reasonably believes will have a material adverse effect upon the **Named Insured's** reputation.

**Crisis event expenses** means reasonable fees, costs and expenses incurred by the **Named Insured** for consulting services provided by a public relations firm to the **Named Insured** in response to a **crisis event**.

**Damages** are monetary judgments, awards and settlements, **you** are legally obligated to pay because of a **claim,** provided any settlement is negotiated by



or with our assistance and approval. **Damages** also include prejudgment or post-judgment interest awarded against **you** on such judgments or awards.

**Damages** do not include:
A.    civil or criminal fines, penalties, sanctions or forfeitures, imposed on **you** whether pursuant to law, statute, regulation or court rule;
B.    punitive or exemplary amounts, and the multiplied portion of multiplied awards on **claims** otherwise payable under this Policy;
C.    amounts for which **you** are not financially liable or that are without legal recourse to **you**;
D.    amounts owed by **you** to **your** client by reason of money loaned to or invested with **you** in **your** individual capacity for **your** personal use or investment in **your** own venture;
E.    injunctive or declaratory relief.

**Denial of service attack** means an attack executed over one or more **networks** or the **internet** that is specifically designed and intended to disrupt the operation of a **network** and render a **network** inaccessible to authorized users.

**Dissolution** means:
A.    the termination of the legal existence of an organization, regardless of structure, whether by legislation, surrender, expiration or forfeiture of charter for any cause, bankruptcy; or
B.    loss of all of an entity's partners, principals, officers or directors; or
C.    the cessation of the rendering of **professional services**.

**Electronic infection** means the transmission of a **computer virus** to a **network**, including without limitation, such transmission to or from **your network**.

**Electronic information damage** means the **unauthorized access** to, destruction of, addition to, deletion of or alteration to any:
A.    third-party's information residing on **your network**; or
B.    information residing on the **network** of **your** client, if caused by **you** in the rendering of **professional services**.

**Internet** means the worldwide public **network** of computers as it currently exists or may be manifested in the future, but **internet** does not include **your network**.

**Interrelated acts or omissions** mean all acts or omissions in the rendering of **professional services** that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision.

**Interrelated claims** are all **claims** arising out of a single act or omission or arising out of **interrelated acts or omissions** in the rendering of **professional services**.

**Investment advisory services** means:



A.    giving financial, economic or investment advice, including personal financial planning; or

B.    performing investment management services with respect to investments in securities or insurance products or investments in real estate;

whether the advice or services referred to in paragraphs A. or B. of this definition are given or performed as a registered or unregistered investment advisor.

However, the services referred to in paragraph B. of this definition do not include the barter, purchase or sale of securities or insurance products.

**Named Insured** means the individual or entity named on the Declarations as the **Named Insured**.

**Network** means a party's local or wide area network owned or operated by or on behalf of or for the benefit of that party; provided, however, **network** shall not include the **internet**, telephone company **networks**, or other public infrastructure **network**.

**Network damage** means:
A.    the unscheduled or unplanned inability of an authorized user to gain access to a **network**;
B.    **electronic information damage**; or
C.    the suspension or interruption of the operation of any **network**.

**Non-public personal information** means personal information not available to the general public from which an individual may be identified, including without limitation, an individual's name, address, telephone number, social security number, account relationships, account numbers, account balances, and account histories.

**Outside organization** means:
A.    a not-for-profit corporation, fund, foundation or organization that is exempt from federal income tax as an organization described in Section 501(c)(3), 501(c)(4), 501(c)(6) or 501(c)(7) of the Internal Revenue Code of 1986, as amended; and
B.    that has been reported on the **Named Insured's** most recent application or renewal application with us.

**Outside organization director** means an individual who was, is or shall be duly elected to a position, however named, in the governing body of an **outside organization**.

**Outside organization matter** means a written or oral demand for money received by **you**, naming **you** and alleging an error, misstatement, misleading statement, act, omission, neglect or breach of duty by **you** in **your** capacity as an **outside organization director** or **outside organization officer**. A demand shall include the service of suit or the institution or notice of any administrative, investigative,   arbitration   or   other proceeding against **you**.



**Outside organization officer** means an individual who was, is or shall be duly elected or appointed as an officer of an **outside organization**.

**Personal fiduciary** is an executor, administrator or representative of an estate or a trustee of a **personal trust**.

**Personal injury** means libel, slander, disparagement, false arrest, wrongful detention, false imprisonment, wrongful entry or eviction or other invasion of the right of private occupancy, malicious prosecution or violation of an individual's or entity's right of privacy. **Personal injury** also includes emotional distress and mental anguish arising from any of the above.

**Personal trust** means an individual or family trust established for the sole benefit of the individual or family or a charitable remainder trust as defined under Internal Revenue Code Section 664.

**Policy period** means the period of time from the effective date and time shown in the Declarations and the date and time of termination, expiration or cancellation of this Policy.

**Predecessor firm** means:
A.   a partnership, professional corporation, professional association, limited liability corporation or limited liability partnership engaged in **professional services** which has undergone **dissolution** and from which 50% or more of the owners, partners, or officers have joined the **Named Insured** as an owner, partner, officer, associate or employee;
B.   a sole proprietor engaged in **professional services** which has joined the **Named Insured** as an owner, partner, officer, associate or employee unless otherwise excluded by endorsement; or
C.   any individual or entity identified as a **predecessor firm** by endorsement to this Policy.

**Principal Insured** means an **Insured** member of the board of managers, director, executive officer, natural person partner, owner of a sole proprietorship, principal, risk manager or in-house general counsel of the **Named Insured**.

**Prior acts date**, if any, is indicated on the Declarations. This Policy excludes from coverage all **claims** by reason of acts or omissions that happened before the **prior acts date**.

**Prior insurer** means an insurer, including us and any subsidiary or affiliate of ours, who has issued prior accountants professional liability insurance coverage.

**Privacy breach notice law** means any statute or regulation that requires an entity who is the custodian of **non-public personal information** to provide notice to individuals of any actual or potential privacy breach with respect to such **non-public personal information**. **Privacy breach notice laws** include



Sections 1798.29 and 1798.82- 1798.84 of the California Civil Code (formerly S.B. 1386) and other similar laws in any jurisdiction.

**Privacy claim** means a demand received by **you** for money or services naming **you** and alleging **privacy injury and identity theft** that occurred in the rendering of **professional services**. A demand shall include the service of suit or the institution of arbitration proceedings against **you**.

**Privacy injury and identity theft** means:
A.     any unauthorized disclosure of, inability to access, or inaccuracy with respect to, **non-public personal information** in violation of:
   1.     **your privacy policy**; or
   2.     any federal, state, foreign or other law, statute or regulation governing the confidentiality, integrity or accessibility of **non-public personal information**, including but not limited, to the Health Insurance Portability and Accountability Act of 1996, Gramm-Leach-Bliley Act, Children's Online Privacy Protection Act, or the EU Data Protection Act.
B.     **your** failure to prevent **unauthorized access** to **confidential commercial information**.

**Privacy policy** means **your** policies in written or electronic form that:
A.     govern the collection, dissemination, confidentiality, integrity, accuracy or availability of **non-public personal information**; and
B.     **you** provide to **your** customers, employees or others who provide **you** with **non-public personal information**.

**Professional services** mean those services performed:
A.     in the practice of public accountancy by **you** for others for remuneration that inures to the benefit of the **Named Insured**, including but not limited to consulting services and **investment advisory services**;
B.     by **you** for others for remuneration that inures to the benefit of the **Named Insured** as:
   1.     a **bankruptcy trustee**, **court-appointed receiver**, or **personal fiduciary**; or
   2.     an arbitrator, mediator or notary public;
C.     by **you** for others as a member of a formal accreditation, standards review or similar professional board or committee related only to the accounting profession; or
D.     by **you** for others as a **benefit plan fiduciary**.

**Professional services** also mean those services identified in paragraphs A. and B. above when rendered on a pro bono basis by those of **you** specified in paragraphs A. and B. of the definition of **You** and **your**, if at the time such services were undertaken, a partner, officer or director of the **Named Insured** approved the rendering of such services without compensation to any of **you**.

**Regulatory proceeding** means  an administrative, disciplinary, investigative



or regulatory proceeding initiated against **you** by a state licensing board, self-regulatory body, public oversight board, governmental agency or any entity acting on their behalf that has the authority to regulate **your professional services**.

A **regulatory proceeding** shall be deemed initiated:
A.     on the date of service upon or other receipt by **you** of a complaint against **you** in such proceeding; or
B.     upon **your** being identified in writing and by name in an order of investigation, subpoena, Wells Notice, target letter (within the meaning of Title 9, §11.151 of the United States Attorney's Manual), or other similar document as someone against whom a **regulatory proceeding** may be brought.

**Security breach** means the failure of **your network** hardware, software or firmware, the function or purpose of which is to:
A.     identify and authenticate parties prior to accessing **your network**;
B.     control access to **your network** and monitor and audit such access;
C.     protect against **computer viruses**;
D.     defend against **denial of service attacks** upon **you** or unauthorized use of **your network** to perpetrate a **denial of service attack**;
E.     ensure confidentiality, integrity and authenticity of information on **your network**.

**Unauthorized access** means any accessing of information in **your** care, custody or control by unauthorized persons or by authorized persons accessing or using such information in an unauthorized manner. **Unauthorized access** also includes:
A.     theft from **you** of any information storage device used by **you** to:
       1.     store and retrieve information on **your network**; or
       2.     transport information between **you** and authorized recipients;
B.     any unauthorized use by **you** of information in **your** clients' care, custody or control if accessed by **you** in the course of rendering **professional services**.

**You** and **your** means the **Named Insured** and any **predecessor firm** and:
A.     any person who is or becomes a partner, officer, director, associate, or employee of the **Named Insured** but only for **professional services** performed on behalf of the **Named Insured**;
B.     any person previously affiliated with the **Named Insured** or a **predecessor firm** as a partner, officer, director, associate, or employee but only for **professional services** performed on behalf of the **Named Insured** or a **predecessor firm** at the time of such affiliation;
C.     any person or entity that is an independent contractor to the **Named Insured** provided that such person or entity is not:
       1. employed by the **Named Insured** or **predecessor firm** or by any entity controlled, owned, managed or operated by the **Named**



**Insured** or **predecessor firm**; or

2. controlled, owned, managed or operated by the **Named Insured** or **predecessor firm** or by any entity that is controlled, owned, managed or operated by the **Named Insured** or **predecessor firm**;

but only for **professional services** performed on behalf of the **Named Insured** and only to the extent that remuneration for such services inures to the benefit of the **Named Insured**.

## II.   COVERAGE AGREEMENTS

A.   In accordance with all the terms and conditions of this Policy, we will pay on **your** behalf all sums in excess of the deductible, up to our limits of liability, that **you** become legally obligated to pay as **damages** and **claim expenses** because of a **claim** that is both first made against **you** and reported in writing to us during the **policy period** by reason of an act or omission in the performance of **professional services** by **you** or by any person for whom **you** are legally liable provided that:

1. **you** did not give notice to a **prior insurer** of any such act or omission or **interrelated act or omission**;

2. prior to the effective date of this Policy, none of **you** had a basis to believe that any such act or omission, or **interrelated act or omission**, might reasonably be expected to be the basis of a **claim**;

3. such act or omission happened subsequent to the **prior acts date**;

4. **you** did not give notice to a **prior insurer** of an **interrelated claim**.

B.   We have the right and duty to defend any **claim** seeking **damages**, even if any of the allegations of the **claim** are groundless, false or fraudulent. We will investigate any such **claim** as we deem appropriate. We will not settle any **claim** without **your** written consent, which shall not be unreasonably withheld. **You** and we agree to consult with each other, and, if **you** are a member, with the American Institute of Certified Public Accountants, to resolve any differences relating to such settlement.

C.   We are not obligated to investigate, defend, pay or settle a **claim** after the applicable limit of our liability has been exhausted by payment of **damages** or **claim expenses** or by any combination thereof, or after we have tendered the remaining available limits of liability into a court of competent jurisdiction. In such case, we shall have the right to withdraw from the further investigation, defense or settlement of any **claim** by tendering control of said investigation, defense or settlement to **you**. We will initiate, and cooperate in, the transfer of control to **you** of any **claims** that were reported to us prior to the exhaustion of such limit. **You** must cooperate in the transfer of control of such **claims**. We agree to take the necessary steps, as we deem appropriate, to avoid a default in such



**claims** until such transfer has been completed, provided **you** cooperate in completing such transfer. **You** must reimburse us for expenses we incur in taking those steps we deem appropriate to avoid a default.

D.    If we conclude that the limit of liability applicable to any **claim** may become exhausted prior to the conclusion of the **claim**, we will notify the **Named Insured**, in writing, as soon as practicable, to that effect. When the limit of liability applicable to any **claim** has actually been exhausted prior to the conclusion of the **claim**, we will notify the **Named Insured**, in writing, as soon as practicable, that such limit has been exhausted.

## III.    LIMITS OF LIABILITY

A.    Each **Claim**

Subject to B. below, the limit of liability for **damages** and **claim expenses** for each **claim** shall not exceed the amount stated in the Declarations as "Per **claim**."

B.    Aggregate

Subject to A. above, the limit of our liability for **damages**, and **claim expenses** for all **claims** shall not exceed the amount stated in the Declarations as "Aggregate."

C.    Deductible

Our obligation to pay **damages** and **claim expenses** as a result of a **claim** is in excess of the applicable amount of the deductible. The **Named Insured** agrees to pay all **damages** and **claim expenses** up to the amount of such deductible. The deductible amount applies either on a per **claim** or on an aggregate basis as is indicated on the Declarations. Payment of the deductible or portions thereof shall be made by the **Named Insured** as **claim expenses** are incurred or **damages** are paid.

D.    Multiple insureds, **claims** and claimants

The limits of liability shown in the Declarations and subject to the provisions of this Policy is the amount we will pay as **damages** and **claim expenses** regardless of the number of **you**, **claims** made or persons or entities making **claims**. If **interrelated claims** are subsequently made against **you** and reported to us, all such **interrelated claims**, whenever made, shall be considered a single **claim** first made and reported to us within the **policy period** in which the earliest of the **interrelated claims** was first made and reported to us.

E.    Risk Management Incentives

1.    Mediation



With respect to a **claim**, **your** deductible applying to the **claim** will be reduced by 50%, provided that:

a. the **claim** is mediated by an independent, disinterested third party mediator who is compensated for such services and who is appointed by us or approved by us in writing;

b. the **claim** is mediated either without institution of arbitration proceedings or service of suit or within 60 days of the institution of such proceedings or service of suit; and

c. such **claim** is ultimately resolved for an amount acceptable to **you** and us.

In no event shall the amount of the deductible waived hereunder exceed $50,000.

2.   Use of Engagement Letters

If **you** utilized an engagement letter in any engagement other than audit services or attest services:

a. that was signed within the preceding 11 month period prior to rendering the **professional services** at issue in the **claim**; and

b. the **claim** is otherwise covered under the Policy;

then we will reduce **your** deductible, applying to that **claim**, by 50%, up to a total amount of $5,000.

In the event that paragraphs E.1. and E.2. both apply to a **claim**, in no event shall the total amount of the deductible waived for that **claim** exceed $50,000.

## IV.   SUPPLEMENTARY BENEFITS

While not **damages**, we will make the following payments in addition to our limits of liability. No Deductible applies to any payments made under this Supplementary Benefits Section.

1.   Defendants Reimbursement

We agree to pay **you** $100 per hour for the time **you** spend to attend a trial, court hearing, mediation or arbitration proceeding at our request in connection with a **claim**.

2.   **Regulatory Proceeding**

We agree to pay **your** attorney fees and other reasonable costs, fees and



expenses incurred in responding to a **regulatory proceeding** initiated during the **policy period** and reported to us in accordance with Section VI.C. of this Policy, provided that such **regulatory proceeding** is initiated in connection with:

a.    an act or omission in the rendering of **professional services**; or

b.    an actual or alleged violation of a **privacy breach notice law** or any law referenced under the definition of **privacy injury and identity theft**, but only if such actual or alleged violation concerns **confidential commercial information** or **non-public personal information** that was gathered in the course of rendering **professional services**;

that occurred after the **prior acts date** indicated on the Declarations.

The maximum amount we will pay for such attorney fees and other reasonable costs, fees and expenses is $25,000 regardless of the number of **regulatory proceedings** or the number of **you** who are subject to such **regulatory proceedings**.

3.    Subpoena Assistance

If during the **policy period**, **you** receive a subpoena for documents or testimony as a fact witness arising from an act or omission in the rendering of **professional services** which occurred after the **prior acts date**, and **you** would like our assistance in responding to the subpoena, **you** may provide us with a copy of the subpoena and we will retain an attorney to provide advice regarding the production of documents, to prepare **you** for sworn testimony, and to represent **you** at **your** deposition, provided that:

a.    the subpoena arises out of a lawsuit to which **you** are not a party; and

b.    **you** have not been engaged to provide advice or testimony in connection with the lawsuit, nor have **you** provided such advice or testimony in the past.

Any notice **you** give us of such subpoena shall be deemed notification of a potential **claim** under Section VI.D. of this Policy.

4.    Defense of Third Party Discrimination Demand

If, during the **policy period**, a demand is received by **you** for money or services and

a.    arises solely from **your** alleged refusal after the **prior acts date** to provide **professional services** due to discrimination, for reasons of age, race, creed, color, gender, religion national origin,



disability, marital status or sexual preference; and

b.     does not arise out of **your** intentional disregard or willful failure to comply with federal or state laws governing discriminatory practices; and

c.     the demand is otherwise covered under the terms and conditions of the Policy but for the absence of the rendering of **professional services**;

then we will provide **you** with a defense subject to **your** deductible and the available limits of liability in the Policy. There will be no coverage for **damages** regardless of the ultimate findings.

5.     **Outside Organization Matter**

We agree to pay **your** attorney fees and other reasonable costs, fees and expenses incurred in responding to an **outside organization matter** initiated during the **policy period** and reported to us in accordance with Section VI.C. of this Policy, provided that:

a.     **you** did not give notice of the acts, errors or omissions, or related acts, errors or omissions, that form the basis of such **outside organization matter** to a prior insurer (including us or any subsidiary or affiliate of ours) that issued prior outside organizations directors and officers coverage;

b.     prior to the inception date of this Policy, **you** had no basis to believe that such acts, errors or omissions, or related acts, errors or omissions, might reasonably be expected to be the basis of an **outside organization matter**;

c.     such acts, errors or omissions occurred after the **prior acts date** indicated on the Declarations;

d.     **your** service as an **outside organization director** or **outside organization officer** for such **outside organization** was performed with the knowledge and explicit approval of the **Named Insured**; and

e.     any indemnification available to **you** for attorney fees and other costs, fees and expenses from the **outside organization** or its insurers has been exhausted.

The maximum amount we will pay for such attorney fees and other reasonable costs, fees and expenses is $15,000 per **outside organization matter**, regardless of the number of **you** who are subject to such **outside organization matter**, up to a maximum of $30,000 per **policy period** for all **outside organization matters**.



6.      **Crisis Event Expenses**

We agree to pay up to a maximum of $20,000 per **policy period** for **crisis event expenses** that result from all **crisis events** first occurring and reported in writing to us during the **policy period**.

## V.      EXCLUSIONS

This Policy does not apply to:

A.      any **claim** for **bodily injury** regardless of cause;

B.      any **claim** for damage to, destruction of, or loss of use of tangible property.

This exclusion does not apply to client records which are in **your** care, custody or control;

C.      any **claim** based on or arising out of liability assumed under any contract or agreement unless **you** would have been liable if the contract or agreement did not exist;

D.      any **claim** based on or arising out of a dishonest, illegal, fraudulent, criminal or malicious act by any of **you**. We shall provide **you** with a defense of such **claim** unless or until the dishonest, illegal, fraudulent, criminal or malicious act has been determined by any trial verdict, court ruling, regulatory ruling or legal admission, whether appealed or not. Such defense will not waive any of our rights under this Policy. Criminal proceedings are not covered under this Policy regardless of the allegations made against **you**. This exclusion shall not apply to the coverage provided to the **Named Insured** for **crisis event expenses**;

E.      any **claim** based on or arising out of **professional services** performed for any entity, including an entity held in a **personal trust**, if at the time of the act or omission giving rise to the **claim**, **you** or **your** spouse were a director, officer or partner of, or had management responsibilities for, such entity, or the owner of more than a 15% equity interest in such entity;

F.      any **claim** based on or arising out of **professional services** rendered by **you** as an executor, administrator or personal representative of an estate or as a trustee if **you** or **your** spouse are a beneficiary or distributee of said estate or trust;

G.      any **claim** based on or arising out of **your** capacity as:
1.      an officer, director, trustee, partner or other member of a governing body of an entity, other than the **Named Insured**. This exclusion    shall    not apply   to   the   coverage   provided   to



**outside organization directors** and **outside organization officers**;

2. a guardian or conservator of an individual;

3. a conservator of an entity;

4. a trustee for an investment fund established for the benefit of any entity or group of unrelated individuals. This exclusion shall not apply to an accountant when acting as a trustee for a **personal trust**; or

5. a plan administrator of an employee benefit plan, or the trustee of any trust established to fund such plan, or any other fiduciary of such plans, regardless of whether the **claim** is brought against **you** under the Employee Retirement Income Security Act of 1974, its amendments or any other similar state or local law. This exclusion does not apply:

   a. with respect to coverage provided to **you** as a **benefit plan fiduciary**; or

   b. if **you** are deemed to be a fiduciary solely by virtue of **professional services you** render as an accountant to the plan, including accounting, audit, attest, consulting, tax, investment advisory services, or administrative services to an employee benefit plan as an independent third party consultant;

H. any **claim** based on or arising out of **your** capacity as a broker or dealer in securities, as those terms are defined in Sections 3(a)(4) and 3(a)(5), respectively, of the Securities Exchange Act of 1934;

I. any **claim** based on or arising out of any anti-trust law violation or any agreement or conspiracy to restrain trade unless the allegations arise solely from **your** performance of **professional services** as a member of a formal accreditation, standards review or similar professional board or committee, related only to accountancy, and such services are within the scope of that committee's or board's established guidelines;

J. any **claim** based on or arising out of the gaining of any personal profit or advantage to which **you** are not legally entitled in the rendering of **professional services** in **your** capacity as a **personal fiduciary**;

K. solely with respect to **benefit plan fiduciaries**, any **claim** based on or arising out of:

1. discrimination in the administration of an employee benefit plan or acceptance of participation in such employee benefit plan;

2. the failure to collect contributions owed to an employee benefit plan or other employee program or for the return or any contributions to an employer if such amounts are or could be chargeable to the employee benefit plan or other employee



program;

3.     benefits paid or payable to a participant or beneficiary of an employee benefit plan or other employee programs if such benefits are paid or may lawfully be paid from the funds of such employee benefit plan or other employee program;

4.     failure to comply with any law concerning worker's compensation, unemployment insurance, social security benefits or disability benefits;

5.     failure or omission to effect and maintain insurance or bonding for employee benefit plan property or assets; or

6.     the bankruptcy of or suspension of payment by any bank, banking firm or other financial institution or by any broker/dealer in securities or commodities.

## VI.   POLICY CONDITIONS

### A.   Coverage Territory

This Policy applies to acts or omissions committed by **you** anywhere in the world, regardless of where the **claim** is made or suit is brought. If covered **damages** are stated or incurred in a currency other than that of the United States of America, such payment will be made in the currency of the United States of America at the rate of exchange published in The Wall Street Journal on the date the Insurer's obligations to pay such **damages** are established (or if not published on such date, the next publication date).

### B.   Sole Agent

The **Named Insured** shall be the sole agent of all of **you** for the purpose of effecting or accepting any notices hereunder, any amendments to or cancellation of this Policy; for the completing of any applications; for the making of any statements, representations and warranties; for the payment of any premium and the receipt of any return premium that may become due under this Policy; and for the exercising of, or declining to exercise any right under this Policy.

### C.   Duties in the event of a **claim**

1.     **You** must give us written notice as soon as reasonably possible during the **policy period** of any **claim** made against **you**. We agree that **you** may have up to, but not to exceed, 60 days after the Policy expiration to report to us a **claim** made against **you** during the **policy period** if the reporting of such **claim** is as soon as reasonably possible.

2.     **You** must:
    a.     immediately forward all documents received in connection with the **claim** to us;

 © CNA All Rights Reserved.



b.   fully cooperate with us or our designee in the investigation, the making of settlements, the conduct of suits or other proceedings, or enforcing any right of contribution or indemnity against another who may be liable to **you** in connection with a **claim**;

c.   attend depositions, hearings and trials;

d.   assist in securing and giving evidence obtaining the attendance of witnesses; and

e.   refuse, except at **your** own cost, to admit any liability, assume any **damages,** voluntarily make any payments, or incur any **claim expenses**.

D.   Duties in the event of a potential **claim**

If, during the **policy period**, **you** become aware of an act or omission that may reasonably be expected to be the basis of a **claim** against **you**, **you** must give written notice to us prior to the expiration of the **policy period**. Such notice must state the reasons for anticipating a **claim**, with full particulars, including but not limited to:

1.   the specific act or omission;

2.   the dates and persons involved;

3.   the identities of anticipated or possible claimants;

4.   the circumstances by which **you** first became aware of the potential **claim**.

If such notice is given, then any **claim** that is subsequently made against **you** and reported to us shall be deemed to have been made at the time such written notice was received by us.

In the event we determine there is an opportunity to avoid a **claim** arising out of a potential **claim you** have reported to us and we incur legal or expert expenses to do so, such expense will be at our cost and not be subject to **your** deductible.

E.   Notice

Notice of any **claim** or potential **claim** should be sent by regular mail or email to the addresses specified in the Declarations. The date the Insurer receives such notice shall constitute the date such notice was given. Proof of mailing shall be sufficient proof of notice.

F.   Changes/Transfer of Interest

Notice to any of our agents or knowledge possessed by any such agent or any other person shall not act as a waiver or change in any part of this Policy. **You** agree to first obtain our written consent to make any changes, transfers or assignments of this Policy. None of the provisions of this Policy will be waived, changed or modified except by written



endorsement issued to form a part of this Policy.

G.    Entire contract

This Policy consists of the Declarations, the Policy form, all endorsements attached to the Policy, the completed and signed application and all supplementary information and statements **you** have provided to us.

By acceptance of this Policy **you** agree that all of the information and statements provided to us by **you** are true, accurate and complete. This Policy has been issued in reliance upon the truth and accuracy of those representations.

No concealment, misrepresentation or fraud shall avoid or defeat recovery under this Policy unless such concealment, misrepresentation or fraud was material. Concealment, misrepresentation or fraud in the procurement of this Policy, which if known by us would have led to refusal by us to make this contract or provide coverage for a **claim** hereunder, will be deemed material.

H.    Other Insurance

If **you** have other valid and collectible insurance that applies to the **claim**, this insurance shall be excess over any other insurance, self-insurance, self-insured retention or similar programs, whether primary, excess, contingent or on any other basis.

If no other insurer defends a **claim** that we have an obligation to defend, we will do so, but we will be entitled to **your** rights against all those other insurers.

We will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay in absence of this insurance and the total of all deductible and self-insured amounts under all such other insurance or other available programs.  This provision does not apply to other insurance that was purchased by **you** specifically to apply in excess of the limits of liability shown on the Declarations of this Policy.

I.    Legal Action Limitation

**You** agree not to bring any legal action against us concerning this Policy unless **you** have fully complied with all the provisions of this Policy, and the amount of **your** obligation to pay has been finally decided. Such amount can be decided by final judgment against **you** or by written agreement between **you**, us and the claimant. **You** agree to bring any such action within two years, or during any applicable statute of limitations for the bringing of such action, whichever is longer.



No individual or entity, or their legal representative, is entitled to recover under this Policy until they have secured such judgment or written agreement. Recovery is limited to the extent of the insurance afforded by this Policy. No individual or entity has any right under this Policy to include us in any action against **you** to determine **your** liability, nor will we be brought into such an action by **you** or **your** representative.

J.    Subrogation

In the event of any payment under this Policy, we shall be subrogated to all **your** rights of recovery thereof against any person or organization, including any rights **you** may have against any other person insured under this Policy who is involved in dishonest, fraudulent, criminal, malicious or intentional conduct. **You** shall execute and deliver instruments and papers and do whatever else is necessary to secure and collect upon such rights. **You** shall do nothing to prejudice such rights.

K.    Premium

Premiums for this Policy are payable to us in advance. They may be paid to us or our authorized representative. The first premium is due on the effective date of this Policy.

L.    Innocent insureds

If coverage under this Policy would be excluded as a result of any criminal, dishonest, illegal, fraudulent or malicious acts of any of **you**, we agree that the insurance coverage that would otherwise be afforded under this Policy will continue to apply to any of **you** who did not personally commit, have knowledge of, or participate in such criminal, dishonest, illegal, fraudulent or malicious acts or in the concealment thereof from us.

M.    Reimbursement

While we have no duty or obligation to do so, if we advance any amounts in payment of **damages** or **claim expenses** within the amount of the applicable deductible or in excess of the applicable limit of liability, **you** agree to be jointly and severally liable to us for such amounts. Upon demand, **you** agree to immediately repay such amounts to us.

N.    Bankruptcy/Insolvency

The insolvency or bankruptcy of **you**, or the insolvency of **your** estate**,** shall not release us from the payment of **damages** or **claim expenses** recoverable under this Policy.

 © CNA All Rights Reserved.



O.    Cancellation/Non-Renewal

**Your** rights and ours are stated in the attached State Provisions endorsement.

P.    Liberalization

In the event we make any filing with the insurance supervisory authorities of the state in which this Policy is issued that would broaden coverage under this Policy, and;

1.    such filing is approved or accepted by such insurance authorities to be effective while this Policy is in force; and

2.    such filing includes provisions that would extend or broaden this insurance without additional premium,

the benefit of such extended or broadened provisions shall inure to **your** benefit as though substitution of such policy form had been made. However, such benefit shall not apply to any **claim** which has been made against **you** or potential **claim** reported to us on or prior to the date such benefit is approved or accepted.

Q.    Spouses, Heirs, Legal Representatives

**Your** estates, heirs, legal representatives, assigns, spouses and domestic partners shall be considered insured under this Policy; provided, however, coverage is afforded to such estates, heirs, legal representatives, assigns, spouses and domestic partners only for a **claim** arising solely out of their status as such and, in the case of a spouse or domestic partner, where such **claim** seeks **damages** from marital community property, jointly held property or property transferred from **you** to the spouse or domestic partner. No coverage is provided for any act, or omission of an estate, heir, legal representative, assign, spouse or domestic partner.

R.    Economic and Trade Sanctions

This Policy does not provide coverage for any of **you**, any transaction or that part of **damages** or **claim expenses** that is uninsurable under the laws or regulations of the United States concerning trade or economic sanctions.

**VII.    EXTENDED CLAIM REPORTING PERIOD**

As used herein, **"extended claim reporting period**" means the period of time after the end of the **policy period** for reporting **claims** to us that are made against **you** during the applicable **extended claim reporting period** by reason of an act or omission that happened prior to the end of the **policy period** and is otherwise covered by this Policy. It is understood and agreed that the **extended claim reporting period** shall not be construed to be a new policy and any **claim** submitted during such period shall otherwise be governed by this Policy.



A.    Automatic **extended claim reporting period**

If this Policy is canceled or non-renewed by either us or by the **Named Insured,** we will provide to the **Named Insured** an automatic, non-cancelable **extended claim reporting period** starting at the termination of the **policy period** if the **Named Insured** has not obtained another policy of accountants professional liability insurance. This automatic **extended claim reporting period** will terminate after sixty (60) days.

B.    Optional **extended claim reporting period**

If this Policy is canceled or non-renewed by either us or by the **Named Insured**, then the **Named Insured** shall have the right to purchase an optional **extended claim reporting period**. Once purchased, the **extended claims reporting period** can not be cancelled and the premium for such optional **extended claim reporting period** shall be fully earned upon inception. Such right must be exercised by the **Named Insured** within sixty (60) days of the termination of the **policy period** by providing written notice to us.

C.    Elimination of right to any **extended claim reporting period**

There is no right to the optional **extended claim reporting period** if we cancel or refuse to renew this Policy due to non-payment of premiums or any material misrepresentations in the application for this Policy.

IN WITNESS WHEREOF, we have caused this Policy to be executed by our Chairman and Secretary, but this Policy shall not be binding upon us unless completed by the attachment of the Declarations.

---

Chairman                                                    Secretary