# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| AMERICAN SOUTHWEST MORTGAGE CORPORATION and AMERICAN SOUTHWEST MORTGAGE FUNDING CORPORATION, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | Case No.  CIV-20-00422-PRW |
| | ) | |
| CONTINENTAL CASUALTY COMPANY, | ) ) | |
| Defendant. | ) | |

## ORDER

Before the Court are Defendant's "Motion for Summary Judgment" (Dkt. 30) and Plaintiffs' "Motion for Summary Judgment on Stipulated Facts" (Dkt. 31). For the reasons set forth below, the Court **DENIES** Defendant's "Motion for Summary Judgment" (Dkt. 30) and **GRANTS IN PART** Plaintiffs' "Motion for Summary Judgment on Stipulated Facts" (Dkt. 31).

### Background

The facts as stipulated to by the parties for purposes of their competing summary judgment motions are as follows. *See* Stipulated Facts (Dkt. 29, Ex. 1). Robison Gary Johnson & Associates, PPLC ("Auditor") audited the financial statements of First Mortgage Corporation ("FMC") and compiled an audit report every year for the years 2014, 2015, and 2016.[1] *See id.* ¶ 2. American Southwest Mortgage Corporation ("ASMC")

---

[1] ASMFC and ASMC stipulated for purposes of these summary judgment motions that there were three audit reports. *See* Stipulated Facts (Dkt. 29, Ex. 1) ¶ 2 ("Robison

and American Southwest Mortgage Funding Corporation ("ASMFC") separately extended lines of credit to FMC based on those reports. *See id.* ¶¶ 5, 7, 13.

But there was a critical error in the reports: in each, Auditor reported that all of ASMC's and ASMFC's loans to FMC were "collateralized by mortgage loans"—i.e., that the loans were secured. *Id.* ¶¶ 6, 12. In reality, they were not. *See id.* ¶¶ 4, 6, 12. And had ASMC and ASMFC known that some of their loans were unsecured, they could and would have terminated their respective lines of credit much earlier, avoiding millions of dollars in losses. *See id.* ¶¶ 4, 6, 12.

On March 20 and 22, 2018, respectively, ASMFC and ASMC sued Auditor for professional negligence in connection with these erroneous audit reports. *See id.* ¶¶ 8, 14; AMSC Pet. (Dkt. 29, Ex. 5); ASMFC Pet. (Dkt. 29, Ex. 9). Those lawsuits yielded two consent judgments, one in favor of ASMC against Auditor for $1,500,000.00 and another in favor of ASMFC against Auditor for $1,500,000.00. *See* Stipulated Facts (Dkt. 29, Ex. 1) ¶¶ 10, 16.

At all relevant times, Continental Casualty Company ("Continental") insured Auditor under Accountants Professional Liability Policy Number 128567086 (the

---

performed annual audit reports on the financial statements of First Mortgage Corporation ('FMC') for the three years ending December 31, 2014, 2015, and 2016."). However, in the course of briefing these motions, they recanted: their injuries, they argue, "were caused by the professional auditors' negligence . . . in their performance of two separate audits of First Mortgage Company ('FMC') in 2014 and 2016." Pls.' Mot. for Summ. J. on Stipulated Facts (Dkt. 31) at 6. The difference—two audits or three—is immaterial for the first part of the analysis below but is material for the later portion. Accordingly, the Court proceeds under the stipulated facts for the first part of its analysis (i.e., where this difference is immaterial) but addresses the dispute later on (i.e., where it is material).

"Policy"). *See id.* ¶ 1. The Policy provided coverage for professional negligence claims like those at issue:

> [Continental agrees to] pay on [Auditor's] behalf all sums in excess of the deductible, up to our limits of liability, that you become legally obligated to pay as damages and claim expenses . . . by reason of an act or omission in the performance of professional services by you or by any person for whom you are legally liable[.]

*Id.* Critically for present purposes, the Policy capped coverage at $1,000,000.00 per claim and $3,000,000.00 in aggregate. *See id.*

Continental stipulates that the consent judgments against Auditor in favor of ASMC and ASMFC are for "acts or omissions in the performance of professional services" covered under the Policy. *See id.* ¶ 20. And Auditor, in turn, assigned its entitlement to recovery under the Policy to ASMC and ASMFC. *See id.* ¶ 23. In other words, Continental agrees that it is liable for ASMC and ASMFC's claims and, by a subsequent agreement, will pay ASMC and ASMFC to the extent of its liability under the Policy.

That brings us to the matter at hand. Continental contends that all of ASMC and ASMFC's claims are "interrelated claims," as the Policy defines the phrase, and therefore are subject to the Policy's single-claim limit of $1,000,000.00. *See id.* ¶ 21. ASMC and ASMFC disagree. *See id.* ¶ 22. In their view, each inaccurate audit report was a distinct instance of negligence that both independently relied upon to their detriment and, as such, the aggregate limit of $3,000,000.00 applies. *See id.*

ASMC and ASMFC ("Plaintiffs") brought this action for declaratory relief against Continental ("Defendant," and together with Plaintiffs, the "Parties"), and Continental subsequently brought a counterclaim for declaratory relief against ASMC and ASMFC, to

resolve this narrow question of contract interpretation on the stipulated facts above. *See* Pls.' Compl. for Declaratory J. (Dkt. 1) at 12; Def.'s Answer, Affirmative Defenses and Countercl. (Dkt. 12) at 12; Am. Joint Stipulation (Dkt. 29) at 2 (providing that the coverage issue would be the sole issue presented to the federal district court and that the parties would present that issue based on stipulated facts). Now, with Continental's "Motion for Summary Judgment" (Dkt. 30) and ASMC and ASMFC's "Motion for Summary Judgment on Stipulated Facts" (Dkt. 31) fully briefed and before the Court, the question of whether the per-claim limit of $1,000,000.00 or the aggregate limit of $3,000,000.00 applies is ripe for resolution.

## *Applicable Law*

### I.    *Standard of Review*

Federal Rule of Civil Procedure 56(a) requires "[t]he court [to] grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding whether summary judgment is proper, the court does not weigh the evidence and determine the truth of the matter asserted, but determines only whether there is a genuine dispute for trial before the fact-finder.[2] The movant bears the initial burden of demonstrating the absence of a genuine, material dispute and an entitlement to judgment.[3] A fact is "material" if, under the

---

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015).

[3] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

substantive law, it is essential to the proper disposition of the claim.[4] A dispute is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.[5]

If the movant carries the initial burden, the nonmovant must then assert that a material fact is genuinely disputed and must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; by "showing that the materials cited [in the movant's motion] do not establish the absence . . . of a genuine dispute"; or by "showing . . . that an adverse party [i.e., the movant] cannot produce admissible evidence to support the fact."[6] The nonmovant does not meet its burden by "simply show[ing] there is some metaphysical doubt as to the material facts"[7] or by merely theorizing a plausible scenario in support of its claims. Rather, "'the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"[8] If there is a

---

[4] *Anderson*, 477 U.S. at 248; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[5] *Anderson*, 477 U.S. at 248; *Adler*, 144 F.3d at 670.

[6] Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp.*, 477 U.S. at 322; *Beard v. Banks*, 548 U.S. 521, 529 (2006).

[7] *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (alteration in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995)).

[8] *Neustrom*, 156 F.3d at 1066 (quoting *Anderson*, 477 U.S. at 251–52; *Bingaman v. Kan. City Power & Light Co.*, 1 F.3d 976, 980 (10th Cir. 1993)).

genuine dispute as to some material fact, the district court must consider the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party.[9]

## II.     *Principles of Contract Interpretation*

The Parties agree that Oklahoma law governs this contract dispute, *see* Pls.' Mot. for Summ. J. on Stipulated Facts (Dkt. 31) at 18; Def.'s Mot. for Summ. J. (Dkt. 30) at 11, so the Court applies Oklahoma law.[10] Under Oklahoma law, "insurance policies," like the one at issue here, "are contracts interpreted as a matter of law."[11] "If the terms of a[n insurance] contract are unambiguous, clear[,] and consistent, they are accepted in their plain and ordinary sense" and are "the only legitimate evidence of what the parties [to that insurance contract] intended."[12] The Court "will not create an ambiguity by using a forced or strained construction, by taking a provision out of context, or by narrowly focusing on the provision."[13]

---

[9] *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Sylvia v. Wisler*, 875 F.3d 1307, 1328 (10th Cir. 2017).

[10] *See Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").

[11] *Atain Specialty Ins. Co. v. Tribal Const. Co.*, 912 F. Supp. 2d 1260, 1268 (W.D. Okla. 2012) (citing *BP America, Inc. v. State Auto Property & Cas. Ins. Co.*, 148 P.3d 832, 835 (Okla. 2005)).

[12] *S. Corr. Sys., Inc. v. Union City Pub. Sch.*, 2002 OK 93, ¶ 14, 64 P.3d 1083, 1088–89 (citations omitted).

[13] *Id.* ¶ 14, 64 P.3d at 1089.

*Discussion*

I.    *The Relevant Provisions of the Policy*

According to the Parties, the question presented is whether the liability cap under the Policy for present purposes is the per-claim limit of $1,000,000.00 or the aggregate limit of $3,000,000.00. The answer to that question necessarily begins with the interpretation of three cross-referencing provisions of the Policy, namely those defining "claims," "interrelated claims," and "interrelated acts or omissions," in light of the aforementioned coverage limits.

The Policy has a per-**claim** limit of $1,000,000.00 and an aggregate limit of $3,000,000.00. *See* Policy (Dkt. 29, Ex. 2) at 1, 32. A "**claim**," in relevant part, "means a demand received by you for money or services naming you and alleging an act or omission . . . in the rendering of professional services. A demand shall include the service of suit or the institution of arbitration proceedings against you." *Id.* at 24 (emphasis in original).

Critically for present purposes, "**interrelated claims**, whenever made, [are] considered a single **claim**" and are therefore subject to the per-claim limit of $1,000,000.00. *Id.* at 32 (emphasis in original). The phrase "**interrelated claims**" means "all **claims** [1] arising out of a single act or omission or [2] arising out of **interrelated acts or omissions** in the rendering of professional services." *Id.* at 26 (emphasis in original). And the phrase "**interrelated acts or omissions**," in turn, "mean[s] all acts or omissions in the rendering of professional services that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision." *Id.*

(emphasis in original) (emphasis omitted).

The meaning of "logically . . . connected" in this last definition was the central focus of the Parties' respective briefs.[14] Plaintiffs argue for a very narrow interpretation of this language; Defendant for a broad one.

## II.    *Tenth Circuit Precedent*

This is not this circuit's first run-in with this "logically . . . connected" language. In *Professional Solutions Insurance Company v. Mohrlang*, another district court in this circuit dealt with a similar situation and substantively indistinguishable language: the insurance policy had a per-claim limit of $500,000.00 and an aggregate limit of $1,000,000.00; the insurance policy provided that "related claims" are subject to the per-claim limit of $500,000.00; another provision of the insurance policy defined "related claims" as "claims arising out of a single act or omission or arising out of related acts or omissions in the rendering of professional services," where "related acts or omissions" meant "all acts or omissions in the rendering of professional services that are temporally, logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision"; and the insurer argued that the claims against the insured were "related" such that the single-claim limit applied.[15] The district court held that the "logically . . . connected" language was unambiguous and, as a result, gave the phrase its

---

[14] Plaintiffs and Defendant focus exclusively on the "logically . . . connected" language; neither argues that the claims are or are not "causally connected." Accordingly, the Court does not address that possibility.

[15] *Pro. Sols. Ins. Co. v. Mohrland*, 2009 WL 321706, at **3–4 (D. Colo. Feb. 10, 2009) (emphasis omitted), *aff'd*, 363 F. App'x 650 (10th Cir. 2010).

ordinary meaning: for two claims to be "logically . . . connected," it said, "one must attend or flow from the other in an inevitable or predictable way."[16] It found that the claims in that case were not "logically . . . connected."[17]

On appeal, the Tenth Circuit affirmed.[18] In a short opinion authored by then-Judge Gorsuch, the Tenth Circuit lauded the district court's decision, calling it "cogent and well-reasoned" and "detailed, accurate, and complete," and then adopted the reasoning therein.[19] While the Tenth Circuit's decision in this particular case is not binding precedent,[20] the Court is similarly persuaded by the district court's reasoning in *Mohrlang*. As such, the Court finds that for two acts or omissions to be "logically . . . connected" under the Policy, one act or omission must attend or flow from the other in an inevitable or predictable way.

## III.    *Analysis*

The dispositive question of whether the "claims" are "interrelated," then, turns on whether the "claims" at issue (1) "aris[e] out of a single act or omission . . . in the rendering of professional services" or (2) arise out of acts or omissions that attend or flow one from

---

[16] *Id.* at **8–9, 11.

[17] *See id.* at *11.

[18] *See Pro. Sols. Ins. Co. v. Mohrlang*, 363 F. App'x 650 (10th Cir. 2010).

[19] *See id.* at 652 ("[W]e agree with the district court's cogent and well-reasoned analysis. The analysis was detailed, accurate, and complete, and we see no reason to repeat it here. Accordingly, for substantially the same reasons as articulated by the district court in its order dated February 10, 2009, we AFFIRM."); *see also Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 811–12 (10th Cir. 2009) (discussing, adopting, and applying the test propagated by the district court in *Mohrlang*).

[20] *See id.* at 651 n.* ("This order and judgment is not binding precedent . . . . It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.")

the other in an inevitable or predictable way.[21] If all the potential claims do not fall within one of these two categories, the Court will then also need to determine the number of discrete "claims" in order to arrive at the total coverage limit in play.

      *a.  The Potential "Claims"*

As a preliminary matter, the Court must identify the potential "claims" before determining whether they are "interrelated." A "claim" under the Policy requires (1) "a demand received by [the insured] for money or services naming [the insured]" and (2) alleging an "act or omission" by the insured "in the rendering of professional services." Policy (Dkt. 29, Ex. 2) at 24 (emphasis omitted). The latter requirement is supplied by the failure to identify the absence of security interests in each of the three audit reports. *See* Stipulated Facts (Dkt. 29, Ex. 1) ¶¶ 6, 22. And the former is satisfied by the lawsuits brought by ASMC and ASMFC concerning these erroneous audit reports. *See* Policy (Dkt. 29, Ex. 2) at 24 ("A demand shall include the service of suit or the institution of arbitration proceedings against [the insured]."); ASMC Pet. (Dkt. 29, Ex. 5); ASMFC Pet. (Dkt. 29, Ex. 9). So, at a first cut, there are six unique potential "claims" under the stipulated facts: three by ASMC against Auditor, with one for each negligently omissive audit report; and

---

[21] There are many moving parts to this analysis, so the Court provides a brief recap to reorient the reader: the phrase "**interrelated claims**" means "all **claims** arising out of a single act or omission or arising out of **interrelated acts or omissions** in the rendering of professional services." Policy (Dkt. 29, Ex. 2) at 26 (emphasis in original) (emphasis omitted). And the phrase "**interrelated acts or omissions**," in turn, "mean[s] all acts or omissions in the rendering of professional services that are logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision." *Id.* (emphasis in original) (emphasis omitted). The Court has now defined "logically . . . connected" as attending or flowing one from the other in an inevitable or predictable way.

three by ASMFC against Auditor, again with one for each negligently omissive audit report.[22]

### b. *"Interrelated Claims" as "All Claims Arising Out of a Single Act or Omission"*

The first of the two disjunctive possibilities for the phrase "interrelated claims" trims this list from six to three potential "claims" for purposes of determining the applicable coverage limit. The phrase "**interrelated claims**" includes "all **claims** arising out of a single act or omission . . . in the rendering of professional services." Policy (Dkt. 29, Ex. 2) at 26 (emphasis in original) (emphasis omitted). In this case, under the stipulated facts, there were three distinct omissions—one in each of the audit reports. As such, there can be no more than three distinct claims for purposes of the liability cap. Put differently, all "claims" stemming from a given audit report omission are a single claim for purposes of

---

[22] This conclusion assumes that one "demand" can support more than one "claim." The Court finds that assumption appropriate for three reasons. First, there is no clear language in the Policy to the contrary. Second, the bounding principle in this regard—i.e., as to whether there are one or multiple "claims"—is supplied elsewhere, by provisions defining "interrelated claims" and requiring that a claim stem from a "single act or omission." Third, if that premise is not true (i.e., if a single demand *cannot* support multiple "claims"), absurd results would abound. For example, if that premise is not true, and a single "demand" cannot support more than one "claim," then ASMFC and ASMC could sidestep the restriction simply by sending two separate demand letters or filing two separate lawsuits at the same time, one relating to the 2014 audit report and the other relating to the 2016 audit report, even though it would have only one "claim" if it sent only one letter or filed only one lawsuit relating to both the 2014 and 2016 audit reports. Such an absurd, formalistic interpretation cannot be correct.

determining the applicable coverage limit.[23]

     *c.   "Interrelated Claims" as Acts or Omissions That Attend or Flow From One Another in an Inevitable or Predictable Way*

This leaves the central question presented and briefed by the Parties: whether the omissions from the 2014, 2015, and 2016 audit reports are "interrelated," which the Court has determined depends on whether these omissions attend or flow one from the other in an inevitable or predictable way. The Court answers that question in the negative.

It is true that the omission from each audit report was the same. But there is no indication in the stipulated facts that any earlier omission regarding the secured status of the loans portended a later omission of that information. And that is consistent with the very nature of an audit: the whole purpose is to independently evaluate anew the veracity of a particular financial statement.[24] In other words, each audit is a fresh and focused inquiry uninfluenced by other, earlier audits.[25] Because these audits were discrete, siloed

---

[23] In practical terms, this means that when ASMFC and ASMC each assert claims for professional negligence stemming from the omission from the 2014 audit report, for example, their two claims are "interrelated" and therefore subject to the per-claim cap of $1,000,000.00.

[24] *See Audit,* BLACK'S LAW DICTIONARY (11th ed. 2019) ("A formal examination of an individual's or organization's accounting records, financial situation, or compliance with some other set of standards."); *Audit Report,* BLACK'S LAW DICTIONARY (11th ed. 2019) ("An independent auditor's written statement, usu. accompanying a company's financial statement, expressing the auditor's opinion of the accuracy of the company's financial condition as set forth in the financial statement."); *see also* Independent Auditors' Report (Dkt. 29, Ex. 3) at 3 ("Our responsibility [as auditor] is to express an opinion on *these* financial statements based on our audit.") (emp. added).

[25] Now, that is not to say that similar omissions in separate audits can never be "interrelated." If those omissions were both the product of a flawed form document, for example, then there would be a good argument that the later audit omission predictably followed the earlier audit omission.

efforts, the omissions made in each, though similar, are not connected in an inevitable or predictable way. As such, the "claims" arising from the serial omissions from the audit report are not "interrelated," and are therefore not subject to the per-claim of $1,000,000.00.

> ### d. The Applicable Damage Cap

That brings the us to the final issue. In the stipulated facts, the Parties agree that there were three audit reports. *See* Stipulated Facts (Dkt. 29, Ex. 1) ¶ 2 ("Robison performed annual audit reports on the financial statements of First Mortgage Corporation ('FMC') for the three years ending December 31, 2014, 2015, and 2016."). But in briefing the instant motions, ASMC and ASMFC have backtracked: their injuries, they now contend, "were caused by the professional auditors' negligence . . . in their performance of *two* separate audits of First Mortgage Company ('FMC') in 2014 and 2016." Pls.' Mot. for Summ. J. on Stipulated Facts (Dkt. 31) at 6 (emphasis added); *see also* Def.'s Opp'n to Pls.' Mot. for Summ. J. (Dkt. 33) at 6–7 n.3 (noting the inconsistency). This fact, then, is in dispute.

And it is material too. If there were two audit reports (i.e., two discrete, predicate omissions), then there were two "claims" for purposes of the coverage limit, yielding a cap of $2,000,000.00. *See supra* Section III(a)–(b). But if there were three audit reports (i.e., three discrete, predicate omissions), then the full aggregate limit of $3,000,000.00 is in play.

The Court therefore orders Continental, in light of the foregoing, to declare whether it agrees that there were two erroneous audit reports, not three. And if Continental does

concede that fact, the Court orders ASMC and ASMFC to show cause as to why it should not credit its own contention and the exhibit compiling the audit reports, *see* Audit Reports (Dkt. 29, Ex. 3) at 1, 30 (showing only two audit reports), and conclude that there were only two erroneous audit reports.

### *Conclusion*

For the reasons set forth above, the Court concludes that ASMC and ASMFC's claims arising from a given audit report are "interrelated," while claims arising from different audit reports are not "interrelated." However, because there is a dispute of material fact as to the number of audit reports, the Court cannot determine whether the liability limit under the Policy is $2,000,000.00 or $3,000,000.00. Accordingly, to resolve that dispute of material fact, the Court directs Continental to declare whether it agrees that there were two erroneous audit reports and, if it does, also directs ASMC and ASMFC to show cause as to why the Court should not conclude that there were only two erroneous audit reports.

**IT IS SO ORDERED** this 25th day of August 2021.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE